[L.A. No. 29848. In Bank. July 1, 1971.]

CLEVE BLAIR et al., Plaintiffs and Respondents, v.
PETER PITCHESS, as Sheriff, etc., et al., Defendants and Appellants.

262

## COUNSEL

John D. Maharg, County Counsel, and Robert C. Lynch, Assistant County Counsel, for Defendants and Appellants.

Gibson, Dunn & Crutcher, John L. Endicott, Leland, Hoffman, Kalik, & Goldstein, N. Stanley Leland, Robert D. Raven, Paul E. Homrighausen, Morrison, Foerster, Holloway, Clinton & Clark, Severson, Werson, Berke & Melchior, James B. Werson, Bernardus J. Smit, Styskal, Wiese & Colman, Alvin O. Wiese, Jr., O'Melveny & Myers, Homer I. Mitchell, Girard E. Boudreau, Jr., Stanley H. Williams, Ross L. Malone, James M. Conners and Vernon D. Stokes as Amici Curiae on behalf of Defendants and Appellants.

Charles E. Jones, Michael Henry Shapiro, Stanton J. Price, Ronald L. Sievers and William T. Rintala for Plaintiffs and Respondents.

## OPINION

**SULLIVAN, J.**—In this case we are called upon to determine whether California's claim and delivery law (Code Civ. Proc., §§ 509-521)[1] violates the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and sections 13 and 19 of article I of the Constitution of the State of California.

Originally enacted in 1872, the claim and delivery law · establishes a

---

[1]Hereafter, unless otherwise indicated, all section references are to the Code of Civil Procedure.

procedure by which the "plaintiff in an action to recover the possession of personal property may, at the time of issuing the summons, or at any time before answer" require the sheriff, constable or marshal of a county to take the property from the defendant. (§§ 509, 511.) To initiate the procedure, the plaintiff must file his complaint, obtain the issuance of a summons, and file an affidavit stating that he owns or is entitled to possession of the property, that the defendant is wrongfully detaining the property and that the property has not been taken for a tax, assessment or fine, or been seized under an attachment or execution. The affidavit must also set forth the alleged cause of the wrongful detention of the property and the actual value of the property. (§ 510.) In addition, the plaintiff must file an undertaking of two or more sufficient sureties for double the value of the property. (§ 512.)

The defendant may except to the plaintiff's sureties (§ 513) or require return of the property by filing an undertaking similar to that required of the plaintiff. (§§ 514, 515.) After the sheriff seizes the property, he must deliver it to the plaintiff upon payment of his fees and necessary expenses (§§ 518, 521), and he must file the undertaking, affidavit and other relevant documents with the clerk of the court in which the action is pending (§ 520). Finally if the property is within a building or inclosure the sheriff must publicly demand its delivery, and if it is not voluntarily delivered "he must cause the building or inclosure to be broken open, and take the property into his possession; and, if necessary, he may call to his aid the power of his county." (§ 517.)

Plaintiffs, who are residents and taxpayers of the County of Los Angeles,[2] brought this action against the county and its sheriff, marshal, and deputy sheriff, and against the constable of the Malibu Justice Court to secure an injunction restraining defendants from executing the provisions of the claim and delivery law. Plaintiffs contend that the claim and delivery law is unconstitutional and that, by expending the time of county officials in executing its provisions, defendants are illegally expending county funds.

After defendants had filed an answer to plaintiffs' first amended complaint[3] and had responded to plaintiffs' interrogatories and requests for

---

[2]The affidavits of plaintiffs in support of their motion for summary judgment establish that they each reside in the City of Compton which is within the County of Los Angeles and that each of them, within one year prior to the commencement of this action, was assessed and paid a real property tax to the county.

[3]Plaintiffs' first amended complaint set forth four causes of action. The first cause alleged that the claim and delivery law insofar as it purports to authorize the entry into and search of private premises and the seizure of personal property without the issuance of a warrant by a magistrate upon probable cause "is, on its face and as applied, in violation of Amendments IV and XIV of the United States Constitution, and Article I, § 19 of the California Constitution." The second cause

admissions, plaintiffs moved for summary judgment and, in support of their motion, filed two declarations showing that they are residents and taxpayers of the County of Los Angeles. (See fn. 2, *ante.*) In opposition to the motion, defendants filed 11 declarations of county officials and employees of retail credit merchants. These declarations and the answers to interrogatories and requests for admissions establish the facts set forth below.

When a plaintiff files claim and delivery papers with the county sheriff's or marshal's departments, the clerical personnel of the department process the documents and check whether they comply with the statutory requirements. After a proper undertaking has been filed and the appropriate fees have been paid, the claim and delivery process is given to an officer for execution.

Upon arrival at the location designated in the process, the officer executing it informs the persons present that he is an officer of the court and has come to seize certain property at that location. If the defendant is present, the officer serves him with the summons and complaint. The officer then demands permission to enter and remove the designated items; in most cases, permission is given. After proper identification of the property, it is taken from the premises by a professional mover or other qualified person. If no one is present when the process is executed, a copy of the process is posted on the premises and another copy is mailed to the defendant.

Claim and delivery process is executed only during normal business hours except when no one is present at the location during those hours. Entry is normally achieved by gaining consent of those present; only on rare occasions do officials enter through open windows or use a locksmith to open the door. No force is used by the officials except when necessary to overcome the physical resistance of an occupant of the premises.

---

alleged that said law insofar as it authorizes such entry and seizure without prior timely notice and opportunity to be heard on the merits of the claim "is, on its face and as applied, in violation of the due process clause of the Fourteenth Amendment of the United States Constitution, and of California Constitution, Article I, Section 13." The third cause alleged that the law by requiring an undertaking by the defendant in order to secure the return of the seized property "invidiously discriminates against those who are too poor to provide such an undertaking, and thus contravenes the equal protection clause of the Fourteenth Amendment of the United States Constitution, and Article I, Sections 11 and 21 of the California Constitution." The fourth cause alleged that an actual controversy existed between plaintiffs and defendants because of their contrary claims of the invalidity and validity of the law.

Defendants' demurrers to the third and four causes of action were sustained without leave to amend; defendants' demurrers to the first and second causes were overruled.

The fees charged for executing the process include a mileage fee of 70¢ per mile and a flat service charge of $5 for each seizure of property. In addition, fees are charged for the expenses of moving and storing the property and for the costs of any locksmiths or keepers employed. Except for keepers' charges, all fees are paid to the county treasurer. Of the $5 service fee, $3 is paid into the county general fund and $2 into the county property tax reduction fund.

The declarations of employees of retail credit merchants show that such firms make their credit sales on the basis of form contracts which contain provisions purporting to give the seller authority, with or without legal process, to enter and repossess the property upon default. These declarations also reveal that the firms use claim and delivery process only as a last resort after having failed to collect the debt by other means including form notices, telephone calls, personal letters and visits, and negotiations.

After considering the declarations, the points and authorities and arguments of counsel, the trial court granted plaintiffs' motion for summary judgment. Judgment was entered in favor of plaintiffs and the court issued a permanent injunction restraining defendants and their employees from (1) taking any personal property under color of claim and delivery law unless the defendant is first given a hearing on the merits of the case, and (2) entering any private place to search for and seize any personal property under color of claim and delivery law unless prior thereto probable cause is established before a magistrate. Defendants appeal from the judgment.

We first consider defendants' contention that plaintiffs had no standing to maintain the action and that consequently the trial court's judgment was advisory in nature. As we noted above, plaintiffs bring their suit under section 526a, which authorizes actions by a resident taxpayer against officers of a county, town, city, or city and county to obtain an injunction restraining and preventing the illegal expenditure of public funds.[4] The primary purpose of this statute, originally enacted in 1909, is to "enable a large body of the citizenry to challenge governmental action

---

[4]Section 526a provides: "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein. This section does not affect any right of action in favor of a county, city, town, or city and county, or any public officer; provided, that no injunction shall be granted restraining the offering for sale, sale, or issuance of any municipal bonds for public improvements or public utilities.

"An action brought pursuant to this section to enjoin a public improvement project shall take special precedence over all civil matters on the calendar of the court except those matters to which equal precedence on the calendar is granted by law."

which would otherwise go unchallenged in the courts because of the standing requirement." (Comment, *Taxpayers' Suits: A Survey and Summary* (1960) 69 Yale L.J. 895, 904.)

California courts have consistently construed section 526a liberally to achieve this remedial purpose. Upholding the issuance of an injunction, we have declared that it "is immaterial that the amount of the illegal expenditures is small or that the illegal procedures actually permit a saving of tax funds." (*Wirin* v. *Parker* (1957) 48 Cal.2d 890, 894 [313 P.2d 844].) Nor have we required that the unlawfully spent funds come from tax revenues; they may be derived from the operation of a public utility or from gas revenues. (*Mines* v. *Del Valle* (1927) 201 Cal. 273, 279-280 [257 P. 530]; *Trickey* v. *City of Long Beach* (1951) 101 Cal.App.2d 871, 881 [226 P.2d 694].) A unanimous court in *Wirin* v. *Horrall* (1948) 85 Cal.App.2d 497, 504-505 [193 P.2d 470], held that the mere "expending [of] the time of the paid police officers of the city of Los Angeles in performing illegal and unauthorized acts" constituted an unlawful use of funds which could be enjoined under section 526a. (See also *Vogel* v. *County of Los Angeles* (1967) 68 Cal.2d 18 [64 Cal.Rptr. 409, 434 P.2d 961].)

We have even extended section 526a to include actions brought by nonresident taxpayers (*Irwin* v. *City of Manhattan Beach* (1966) 65 Cal.2d 13, 18-20 [51 Cal.Rptr. 881, 415 P.2d 769). In *Crowe* v. *Boyle* (1920) 184 Cal. 117, 152 [193 P. 111], we stated: "In this state we have been very liberal in the application of the rule permitting taxpayers to bring a suit to prevent the illegal conduct of city officials, and no showing of special damage to the particular taxpayer has been held necessary."

Moreover, we have not limited suits under section 526a to challenges of policies or ordinances adopted by the county, city or town. ■ If county, town or city officials implement a state statute or even the provisions of the state Constitution, an injunction under section 526a will issue to restrain such enforcement if the provison is unconstitutional. (*Lundberg* v. *County of Alameda* (1956) 46 Cal.2d 644 [298 P.2d 1], app. dism. (1956) 352 U.S. 921 [1 L.Ed.2d 157, 77 S.Ct. 224]; *Vogel* v. *County of Los Angeles, supra,* 68 Cal.2d 18.) Indeed, it has been held that taxpayers may sue *state* officials to enjoin such officials from illegally expending state funds. (*Ahlgren* v. *Carr* (1962) 209 Cal.App.2d 248, 252-254 [25 Cal. Rptr. 887]; *California State Employees' Assn.* v. *Williams* (1970) 7 Cal. App.3d 390, 395 [86 Cal.Rptr. 305].) We have even permitted taxpayers to sue on behalf of a city or county to recover funds illegally expended. (*Osburn* v. *Stone* (1915) 170 Cal. 480, 482 [150 P. 367].)

It is clear that the present action was properly brought under section

526a. Plaintiffs have alleged, and by their affidavits have established, that they are residents and taxpayers of the County of Los Angeles. (See fn. 2, *ante.*) It appears from the complaint that plaintiffs seek to enjoin defendants, who admittedly are county officials, from expending their own time and the time of other county officials in executing claim and delivery process. If the claim and delivery law is unconstitutional, then county officials may be enjoined from spending their time carrying out its provisions (*Wirin* v. *Horrall, supra,* 85 Cal.App.2d 497, 504-505) even though by the collection of fees from those invoking the provisional remedy the procedures actually effect a saving of tax funds. (*Wirin* v. *Parker, supra,* 48 Cal.2d 890, 894.)

Defendants argue nevertheless that, even if the instant action fulfills the requirements of section 526a, it was not properly cognizable by the trial court because it does not present a true case or controversy. They point out that there "is no allegation that the plaintiffs were or may be parties to a claim and delivery action."[5] Defendants also contend that as sheriff and marshal, respectively, they merely carry out ministerial functions in executing claim and delivery process and have, therefore, no real interest adverse to plaintiffs. They cite our recent statement that, "[t]he rendering of advisory opinions falls within neither the functions nor the jurisdiction of this court. [Citations.]" (*People* ex rel. *Lynch* v. *Superior Court* (1970) 1 Cal.3d 910, 912 [83 Cal.Rptr. 670, 464 P.2d 126].) They also draw our attention to the long series of United States Supreme Court decisions which have elaborated on the case or controversy requirement.

■ We do not find those cases applicable here, for we conclude that if an action meets the requirements of section 526a, it presents a true case or controversy. As we noted before, the primary purpose of section 526a was to give a large body of citizens standing to challenge governmental actions. If we were to hold that such suits did not present a true case or controversy unless the plaintiff and the defendant each had a special, personal interest in the outcome, we would drastically curtail their usefulness as a check on illegal government activity. Few indeed are the government officers who have a personal interest in the continued validity of their officials acts.

Furthermore, it has never been the rule in this state that the parties in suits under section 526a must have a personal interest in the litigation. We specifically stated in *Crowe* v. *Boyle, supra,* 184 Cal. 117, 152 that

---

[5]Plaintiffs did file declarations by Sandra Daniels, Mrs. Mamie Daniels, Roberta Jackson and Gladys McMickle each describing the seizure of their property under claim and delivery process. However, none of the declarants were made parties to the action.

"no showing of special damage to the particular taxpayer has been held necessary." In *Wirin* v. *Parker, supra,* 48 Cal.2d 890, the plaintiff had no more immediate interest in enjoining the illegal wiretaps conducted by the police department than his status as a resident taxpayer. Similarly, in *Vogel* v. *County of Los Angeles, supra,* 68 Cal.2d 18, the defendant county officials who administered the loyalty oath to new county officials and employees certainly had no personal interest in the continued use of that oath. In both *Wirin* and *Vogel* the plaintiff prevailed, and no suggestion is found in either opinion that the cases failed to present a true case or controversy.

As the extensive briefs in this case demonstrate, taxpayers have a sufficiently personal interest in the illegal expenditure of funds by county officials to become dedicated adversaries. In the same manner, the interest of government officials in continuing their programs is sufficient to guarantee a spirited opposition. There is no danger in such circumstances that the court will be misled by the failure of the parties adequately to explore and argue the issues. We are satisfied that an action meeting the requirements of section 526a thereby presents a true case or controversy.

Having so concluded, we now turn to the substantive issues which we consider in the order presented by defendants. Defendants first attack the second paragraph of the injunction which enjoins them from entering any private dwelling, commercial establishment, private vehicle or other location for the purpose of searching for or seizing personal property under color of the claim and delivery law *"unless prior to such entry, search or seizure, the alleged creditor seeking to invoke the claim and delivery procedure and/or defendants* PETER PITCHESS *and* LESSLIE R. KEAYS, *establish before a magistrate that there is probable cause to believe that the property which is the subject of the claim and delivery procedure is on the premises or in the locaton, place or object to be entered, and that said alleged creditor has a right to the immediate possession of said property."* (Original italics.) Contrary to the position taken by the trial court, defendants assert that the federal and state constitutional protections against unreasonable searches and seizures do not apply to civil matters, but are confined "to cases or public prosecutions instituted and pursued for the suppression of crime or the detection and punishment of criminals."[6]

---

[6]The summary judgment and ensuing injunction rested on the basis that the claim and delivery law violated provisions of both the federal and state Constitutions. Defendants argue that it violates neither Constitution. Since sections 19 and 13 of article I of the California Constitution are substantially equivalent to the Fourth Amendment and to the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution respectively, our analysis of the validity of the

We are convinced, however, that recent decisions of the United States Supreme Court clearly recognize that the protections of the Fourth Amendment extend to civil as well as criminal matters. In *Camara* v. *Municipal Court* (1967) 387 U.S. 523 [18 L.Ed.2d 930, 87 S.Ct. 1727], the Supreme Court overturned its prior decision in *Frank* v. *Maryland* (1959) 359 U.S. 360 [3 L.Ed.2d 877, 79 S.Ct. 804] and held that the Fourth Amendment forbade inspections without warrants of private dwellings to assure compliance with the housing code, even though the inspections were essentially civil in nature. The Supreme Court stated that "[t]he basic purpose of [the Fourth] Amendment, as recognized in countless decisions of this Court, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." (387 U.S. at p. 528 [18 L.Ed.2d at p. 935].) The decision went on to reject the claim that merely because building inspections by government officers constitute intrusions less "hostile" than searches in criminal cases, the Fourth Amendment did not apply to such inspections. The high court said: "It is surely anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior." (Fn. omitted.) (387 U.S. at p. 530 [18 L.Ed.2d at p. 936].)

In the companion case, *See* v. *City of Seattle* (1967) 387 U.S. 541 [18 L.Ed.2d 943, 87 S.Ct. 1737], the Supreme Court expanded the *Camara* rationale and held that inspections of commercial buildings could not be made without warrants. "As we explained in *Camara*, a search of private houses is presumptively unreasonable if conducted without a warrant. The businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property." (387 U.S. at p. 543 [18 L.Ed.2d at p. 946].)

claim and delivery law in respect to the above provisions of the federal Constitution is applicable in respect to the above sections of the state Constitution.

In support of their first argument defendants cite *Murray's Lessee et al.* v. *Hoboken Land and Improvement Co.* (1855) 59 U.S. (18 How.) 272, 277 [15 L.Ed. 372, 374]; *Boyd* v. *United States* (1886) 116 U.S. 616, 624 [29 L.Ed. 746, 748-749, 6 S.Ct. 524]; *Camden County Beverage Co.* v. *Blair* (D.N.J. 1930) 46 F.2d 648; and *United States* v. *Eighteen Cases of Tuna Fish* (W.D.Va. 1925) 5 F.2d 979. While dicta in the above two Supreme Court cases, which were followed in the other cases cited, appear to support defendants' argument, we find it unnecessary to discuss these cases as their interpretation of the Fourth Amendment has been superseded by the more recent decisions of the United States Supreme Court which we discuss below.

Defendants also argue that the framers of the Constitution could not have intended the Fourth Amendment to apply to claim and delivery cases since such replevin remedies long predated the Constitution and were in general use at the time of its adoption. Even if we believed that this argument had merit, we would, of course, still be compelled to follow the recent decisions of the United States Supreme Court which appear to dictate the result in this case.

The Supreme Court again considered the applicability of Fourth Amendment protections to civil matters in *Wyman* v. *James* (1971) 400 U.S. 309 [27 L.Ed.2d 408, 91 S.Ct. 381]. There, the court was confronted with the question of whether a state could require a potential recipient of aid to families with dependent children to allow a social worker to visit his home as a condition of receiving the aid. Although it was held that such a requirement did not violate the Fourth Amendment, the court nevertheless observed that: "When a case involves a home and some type of official intrusion into that home, as this case appears to do, an immediate and natural reaction is one of concern about Fourth Amendment rights and the protection which that Amendment is intended to afford. Its emphasis indeed is upon one of the most precious aspects of personal security in the home." (*Id.* at p. 316 [27 L.Ed.2d at p. 413].) The court also reiterated the holding of *Camara* "that one's Fourth Amendment protection subsists apart from his being suspected of criminal behavior." (*Id.* at p. 317 [27 L.Ed.2d at p. 413].)

Five members of the Supreme Court found that the caseworker's visit was "both rehabilitative and investigative," but concluded that the visit was not a search within the Fourth Amendment because the investigative aspect of the visit "is given too broad a character and far more emphasis than it deserves if it is equated with a search in the traditional criminal law context." (*Id.* at p. 317 [27 L.Ed.2d at p. 414].) They deemed significant the fact that the recipient of aid could refuse to allow the intrusion into his home without fear of criminal sanction. His refusal merely rendered him ineligible for aid. The court went on to hold that even if the caseworker's visit were a search, it was not unreasonable and therefore did not violate the Fourth Amendment.

The teaching of these cases is that the Fourth Amendment applies to civil as well as criminal matters. However, not every official intrusion into the sanctity of the home will be deemed a search within the meaning of the Fourth Amendment. ■ As we read the majority opinion in *Wyman,* if the entry is, in large part, for the benefit of those whose homes are invaded, and if such persons may refuse to allow the intrusion without fear of criminal sanctions, then it is not a search within the Fourth Amendment. ■ Furthermore, since the Fourth Amendment prohibits only *unreasonable* searches and seizures, the governmental interests must be weighed against the citizen's right to privacy to determine under what circumstances a particular type of search will be allowed. (*Camara* v. *Municipal Court, supra,* 387 U.S. 523, 534-539 [18 L.Ed.2d 930, 938-941]; *Wyman* v. *James, supra,* 400 U.S. 309, 318-324 [27 L.Ed.2d 408, 414-418].)

■ Applying these principles to the present case, we find that the

official intrusions authorized by section 517 are unreasonable searches and seizures unless probable cause first be shown.

 In contrast to the visit of a caseworker, the sort of intrusion authorized by section 517 is clearly a search within the meaning of the Fourth Amendment. As with a search in a criminal case, the sheriff executing claim and delivery process enters homes with the full force of the law to seize property on the premises. There can be no pretension that the sheriff enters for a rehabilitative purpose; his only aim is to seize property. Nor can the occupant refuse to allow such entry; indeed, the sheriff may "call to his aid the power of his county" to overcome any resistance which the occupant may offer. (§ 517.) Therefore, we conclude that intrusions into private places in execution of claim and delivery process are searches and seizures within the meaning of the Fourth Amendment.

We also hold that such searches are unreasonable unless made upon probable cause. The only governmental interests which are furthered by the intrusions incident to execution of claim and delivery process are the promotion of commerce, particularly the extension of credit, and the assurance that valid debts will be paid. (Note (1970) 68 Mich.L.Rev. 986, 996-997.) On the other hand, as already pointed out, the citizen's right to privacy is infringed almost as much by such civil intrusions as by searches in the traditional criminal context. Balancing these important individual rights against the less compelling state interests (which, as we note *infra,* are only slightly promoted by execution of claim and delivery process), we find that a search incident to the execution of claim and delivery process is unreasonable unless it is supported by a warrant issued by a magistrate upon a showing of probable cause. (See Note (1967) 3 Harv. Civ. Rights—Civ. Lib. L.Rev. 209, 213-215.) "If the Sheriff cannot invade the privacy of a home without a warrant when the state interest is to prevent crime, he should not be able to do so to retrieve a stove or refrigerator about which the right to possession is disputed." (*Laprease* v. *Raymours Furniture Company* (N.D.N.Y. 1970) 315 F.Supp. 716, 722.)[7]

 Obviously, the affidavits customarily required of those initiating claim and delivery procedures do not satisfy the probable cause standard. Such affidavits need allege only that the plaintiff owns property which the

---

· [7]The mere fact that the intrusions of defendants in execution of claim and delivery process are of a civilized nature, not involving violence or stealth, does not make them compatible with the Fourth Amendment. The primary concern of the Fourth Amendment is the privacy of citizens, and that privacy is shattered by "gentlemanly" efforts such as unlocking doors and entering through open windows as well as by more violent means.

defendant is wrongfully detaining. The affiants are not obligated to set forth facts showing probable cause to believe such allegations to be true, nor must they show probable cause to believe that the property is at the location specified in the process. Finally, such affidavits fail to comply with the probable cause standard because they are not passed upon by a magistrate, but are examined only by the clerical staff of the sheriff's or marshal's department, and then merely for their regularity in form.

Defendants contend that even if the Fourth Amendment does apply to their intrusions into private areas in execution of claim and delivery process, in the vast majority of cases the owner or occupant of the private area has consented to the intrusion and has, thus, waived his Fourth Amendment rights.

 It is well established, of course, that one may waive his Fourth Amendment right to be free from unreasonable searches and seizures. (*People* v. *Davis* (1957) 48 Cal.2d 241, 249 [309 P.2d 1] and cases cited therein; Witkin, Cal. Evidence (2d ed. 1966) § 77, pp. 73-74.) However, it "cannot be overly stressed that the protections embodied in the Fourth Amendment are so fundamental that they are to be jealously guarded and liberally construed." (Fn. omitted.) (Note (1970) 6 Cal. Western L.Rev. 316, 318.) "It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." (Fns. omitted.) (*Johnson* v. *Zerbst* (1938) 304 U.S. 458, 464 [82 L.Ed. 1461, 1466, 58 S.Ct. 1019].) Where government officials rely on consent to justify the lawfulness of a search, the burden is on them to show by clear and positive evidence that the consent was freely, voluntarily and knowledgeably given. (*Bumper* v. *North Carolina* (1968) 391 U.S. 543, 548 [20 L.Ed.2d 797, 802, 88 S.Ct. 1788]; *People* v. *Shelton* (1964) 60 Cal.2d 740, 744 [36 Cal.Rptr. 433, 388 P.2d 665]; *Channel* v. *United States* (9th Cir. 1960) 285 F.2d 217, 219-220.)

Defendants argue that consent to the search is given in two ways. First, they assert that those present on the premises when the executing officer arrives usually agree to his entry. The declarations filed in opposition to the motion for summary judgment indicate that such permission is granted after the officer has identified himself, shown the claim and delivery process to those present, explained its meaning to them and then has requested permission to enter. Under such circumstances, the permission granted constitutes "no more than acquiescence to a claim of lawful authority." (Fn. omitted.) (*Bumper* v. *North Carolina, supra,* 391 U.S. 543, 549 [20

L.Ed.2d 797, 802].) " '[I]nvitations' to enter one's house, extended to armed officers of the law who demand entrance, are usually to be considered as invitations secured by force. [Citation.] A like view has been taken where an officer displays his badge and declares that he has come to make a search [citation], even where the householder replies 'All Right.' [Citation.]" (*Judd* v. *United States* (1951) 190 F.2d 649, 651 [89 App. D.C. 64]; quoted with approval in *Parrish* v. *Civil Service Commission* (1967) 66 Cal.2d 260, 269 [57 Cal.Rptr. 623, 425 P.2d 223].)

■ In claim and delivery cases the occupant of the premises is confronted not only by the intimidating presence of an officer of the law, but also by the existence of legal process which appears to justify the intrusion. In such a situation acquiescence to the intrusion cannot operate as a voluntary waiver of Fourth Amendment rights. (*Bumper* v. *North Carolina, supra*, 391 U.S. 543, 548-550 [20 L.Ed.2d 797, 802-803]; *Parrish* v. *Civil Service Commission, supra*, 66 Cal.2d 260, 268-270.)[8]

Defendants also contend that waiver of Fourth Amendment rights arises from the terms of the retained title sales agreements and collateral security agreements normally involved in claim and delivery cases. Numerous examples of such contracts were attached as exhibits to the declarations in opposition to the motion for summary judgment. The majority of these contracts contain a clause which purports to give the seller or creditor authority to enter any premises and repossess the goods sold.

Such provisions, however, cannot be used to justify defendants' actions. In the first place, under the wording of such clauses, consent is given only to entry by the seller or creditor—not to entry by government officials.[9] ■ By granting one person permission to enter his house, the occupant does not waive his Fourth Amendment rights as to intrusions by all others. Secondly, while we need not pass upon the validity of the consent purportedly obtained under the contracts filed in this case, we cannot refrain from observing that most of those contracts appear to be adhesion contracts, the terms of which are specified by the seller or lender. "The weaker party, in need of the goods or services, is frequently not in a position to shop around for better terms, either because the author of

---

[8]Obviously, the executing officers make no attempt to warn those present of any right to refuse to permit the search, for the statute forbids such refusal. Moreover, while California courts have held that absence of a warning as to Fourth Amendment rights will not per se make consent to a search ineffective (*People* v. *Bustamonte* (1969) 270 Cal.App.2d 648, 653 [76 Cal.Rptr. 17] and cases collected therein), nevertheless, the failure of officers to give such warnings is a factor to be taken into account in determining whether consent was freely given. (*People* v. *MacIntosh* (1968) 264 Cal.App.2d 701, 705 [70 Cal.Rptr. 667].)

[9]Only one of the contracts attached as exhibits to the declarations in opposition to the motion for summary judgment contains a clause purporting to give consent to intrusions by government officials.

the standard contract has a monopoly (natural or artificial) or because all competitors use the same clauses. His contractual intention is but a subjection more or less voluntary to terms dictated by the stronger party; terms whose consequences are often understood only in a vague way, if at all." (Kessler, *Contracts of Adhesion—Some Thoughts About Freedom of Contract* (1943) 43 Colum.L.Rev. 629, 632.)

For substantially the same reason that consent is ineffective to waive Fourth Amendment rights if made under the intimidation implicit in the presence of a uniformed officer of the law (*Bumper* v. *North Carolina, supra,* 391 U.S. 543, 548-550) or explicit in threats of reprisal (*Parrish* v. *Civil Service Commission, supra,* 66 Cal.2d 260, 268-270), a consent obtained in such a contract of adhesion is ineffective to waive the constitutional protections against unreasonable searches and seizures.

For the reasons stated above, we conclude that the trial court did not err in enjoining defendants from entering private places to make searches and seizures under color of the claim and delivery law unless probable cause is first established before a magistrate.

We next consider defendants' objection to the first paragraph of the injunction, which restrains them from taking personal property under color of the claim and delivery law "unless, the alleged debtor has first been afforded an opportunity to be heard in a judicial proceeding, upon prior notice duly given, on the merits of said action, and to contest the claimant's right to possession of such property in said proceeding." It is argued that the trial court erred in concluding that the execution of claim and delivery process without such a hearing would violate the due process clause of the Fifth and Fourteenth Amendments of the United States Constitution and section 13 of article I of the California Constitution.

In determining the proper application to the present case of the due process requirements of the Fourteenth Amendment of the United States Constitution and section 13 of article I of the California Constitution, we are necessarily guided in large part by the recent decision of the United States Supreme Court in *Sniadach* v. *Family Finance Corp.* (1969) 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820]. That case held that Wisconsin's statute permitting prejudgment wage garnishments was unconstitutional because it authorized "a taking of property without that procedural due process that is required by the Fourteenth Amendment." (*Id.* at p. 339 [23 L.Ed.2d at p. 352].) While the court recognized that summary procedures "may well meet the requirements of due process in extraordinary situations [citations]" (*id.*) (see *McCallop* v. *Carberry* (1970) 1 Cal.3d 903, 905, fn. 3 [83 Cal.Rptr. 666, 464 P.2d 122]) it found that the case before it presented "no situation requiring special

protection to a state or creditor interest" and that the Wisconsin statute was not "narrowly drawn to meet any such unusual condition." (*Id.*) The court pointed out that wage garnishments "may impose tremendous hardship on wage earners with families to support" (*id.* at p. 340 [23 L.Ed.2d at p. 353]) and that by garnishing his alleged debtor's wages, the creditor gains enormous and unwarranted leverage. Since wage garnishments are obviously a taking of property, and since there is no state or creditor interest sufficient to justify such a taking prior to judgment, the Supreme Court struck down the Wisconsin statute as a violation of due process.[10]

Applying the reasoning of the *Sniadach* decision to the present case, we conclude that the seizure of property under the claim and delivery law constitutes a taking without due process of law. Although there may be extraordinary situations in which the summary remedy afforded by the claim and delivery law is justified by a sufficient state or creditor interest, that law, like the Wisconsin wage garnishment statute, is not narrowly drawn to cover only such extraordinary situations. Therefore, in light of *Sniadach,* we must hold the claim and delivery law to be unconstitutional.

Like wage garnishments, the execution of claim and delivery process involves a taking of property. Indeed, in claim and delivery cases, the taking is the obvious physical removal of personal property. This deprivation of property is a taking even though the defendant may later recover his property if he prevails at the ultimate trial on the merits and even though the plaintiff must post a bond. In his concurring opinion in *Sniadach*, Justice Harlan clearly pointed out that the " 'property' of which petitioner has been deprived is the *use* of the garnished portion of her wages during the interim period between the garnishment and the culmination of the main suit." (395 U.S. at p. 342 [23 L.Ed.2d at p. 354]; compare the opinion of the court, 395 U.S. at pp. 338-339 [23 L.Ed.2d at pp. 351-352].) Similarly, the "property" of which a defendant is de-

---

[10]Recently in *Boddie* v. *Connecticut* (1971) 401 U.S. 371 [28 L.Ed.2d 113, 91 S.Ct. 780], the Supreme Court, adverting to *Sniadach* and the many other "due process decisions, representing over a hundred years of effort by this Court to give concrete embodiment to this concept" declared: "Prior cases establish, first, that due process requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard." (*Id.* at p. 377 [28 L.Ed.2d at p. 118, 91 S.Ct. at p. 785].) "That the hearing required by due process is subject to waiver, and is not fixed in form does not affect its root requirement that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." (Fns. omitted.) (*Id.* at pp. 378-379 [28 L.Ed.2d at p. 119, 91 S.Ct. at p. 786].)

prived by execution of claim and ·delivery process is the use of the disputed goods between their seizure and the final judgment.[11] Neither the eventual recovery of the property nor the posting of a bond remedies this loss of the use of the property pending final judgment.

Under the reasoning of *Sniadach* a taking such as that involved in claim and delivery procedure violates due process if it occurs prior to a hearing on the merits unless justified by weighty state or creditor interests. Defendants assert that there is such a creditor interest which justifies claim and delivery procedure. Were it not for the claim and delivery law, they argue, debtors threatened with suit would abscond with the property. Such a contention is contradicted by the very declarations filed by defendants in this case. Those declarations, made on behalf of merchants selling on credit—probably the class of creditors most frequently using this provisional remedy—clearly show that legal action and claim and delivery are utilized only as a last resort. Before turning to such expensive procedures, a merchant normally employs other collection devices such as form notices, telephone calls, personal letters and visits, and negotiations. If the debtor wishes to abscond with the property, he will have had more than ample opportunity to do so long before the claim and delivery process is initiated. Affording alleged debtors a hearing on the merits prior to seizure of their property will not substantially increase the risk that they "Shall fold their tents, like the Arabs, And as silently steal away."[*] In short, we believe the asserted creditor interest insufficient to justify the summary procedure authorized by the claim and delivery law.[12]

We recognize that in some instances a very real danger may exist that the debtor may abscond with the property or that the property will be destroyed. In such situations a summary procedure may be consonant with constitutional principles. For example, in 1921, the United States Supreme

---

[11]Defendants claim there is no taking because the property belongs to the creditor and is merely wrongfully detained by the debtor. Defendants' bootstrap argument must fall on its own weight. Of course, ownership and right to possession of the goods are the central issues of the main action, and are not determined until final judgment in the case. The mere unproven claim of the creditor does not make the property his nor make the seizure of it any less a taking.

[*]Longfellow, The Day Is Done (1845).

[12]Defendants also argue that the creditor must be able to repossess the goods prior to trial because if the debtor, who is normally so impecunious as to be essentially judgment proof, is allowed to use the property until judgment the creditor's ultimate victory will be pyrrhic. By the time judgment is entered, so the argument goes, the property will have depreciated sufficiently so that repossession of it will be essentially worthless, and by hypothesis no other recovery against the debtor will be possible. While there may be some substance to this argument, the answer to it is not to deprive the debtor of a hearing but to provide him with an expeditious one so that the property may be quickly recovered.

Court upheld a Delaware statute which authorized the attachment of property located within the state but belonging to nonresidents. (*Ownby* v. *Morgan* (1921) 256 U.S. 94, 110-112 [65 L.Ed. 837, 845-846, 41 S.Ct. 433]; cited in *Sniadach* v. *Family Finance Corp., supra,* 395 U.S. 337, 339 [23 L.Ed.2d 349, 352].) In that case the interest of the creditor in preserving the claimed property and the interest of the state in preserving its jurisdiction were viewed as justifying the special protection afforded by a summary remedy. (But see Note, *supra,* 68 Mich.L.Rev. 986, 1003-1004.) The California claim and delivery law, however, is not limited to such extraordinary situations; indeed, from the declarations on file in this case it is apparent that claim and delivery process is normally used in cases where no such sensitive problems are involved.

However substantially claim and delivery procedure may protect the creditor's interest and indirectly promote the state's interest in business and commerce, it seems to us that such advantages are far outweighed by its detrimental effect upon those whose goods are seized. The removal of personal property, like the garnishment of wages, in many cases imposes tremendous hardship on the defendant and his family and gives the plaintiff unwarranted leverage. The declaration of one of the deputy sheriffs of the County of Los Angeles discloses that the "great majority of items repossessed at residential locations are appliances such as television sets, refrigerators, stoves, and sewing machines, and furniture of all kinds." The seizure of such goods "may as a practical matter drive a wage-earning family to the wall. Where the taking of one's property is so obvious, it needs no extended argument to conclude that absent notice and a prior hearing [citation] this [claim and delivery procedure] violates the fundamental principles of due process." (Fns. omitted.) (*Sniadach* v. *Family Finance Corp., supra,* 395 U.S. 337, 341-342 [23 L.Ed.2d 349, 353-354].)[13]

Our conclusion that seizure of property under color of the claim and delivery law is a denial of due process is supported by the recent case of

---

[13]Defendants' contention that the Fifth Amendment could not have been intended to invalidate a remedy which was in common use at the time that amendment was adopted and which had its roots in the Statute of Marlbridge, 52 Henry III, ch. 21 (1267) is also answered by Justice Douglas, writing for the court in *Sniadach:* "The fact that a procedure would pass muster under a feudal regime does not mean it gives necessary protection to all property in its modern forms." (395 U.S. 337, 340 [23 L.Ed.2d 349, 353]; see also fn. 5, *ante.*) Garnishment also had origins in medieval England and was in use in colonial America (Note (1969) 22 Vand.L.Rev. 1400, 1401); yet as the sentence quoted above indicates, the Supreme Court found that the long history of that remedy did not ensure its present compliance with due process requirements.

*Laprease* v. *Raymours Furniture Company, supra,* 315 F.Supp. 716.[14] In that case, a three-judge federal court, in a carefully reasoned opinion, held that a New York statute similar to California's claim and delivery law was unconstitutional for the reasons mentioned above. Two other cases have reached a contrary conclusion. (*Brunswick Corporation* v. *J & P, Inc.* (10th Cir. 1970) 424 F.2d 100, 105; *Fuentes* v. *Faircloth* (S.D.Fla. 1970) 317 F.Supp. 954, prob. juris. noted (1971) 401 U.S. 906 [27 L.Ed.2d 804, 91 S.Ct. 893].) However, neither of the latter opinions discusses the issue at great length and both appear to rely heavily upon a waiver of Fifth Amendment rights in the particular case. ▮ We are not bound by any of the above decisions (*In re Whitehorn* (1969) 1 Cal.3d 504, 511, fn. 2 [82 Cal.Rptr. 609, 462 P.2d 361]); we are persuaded, however, that *Laprease* represents a sounder resolution of the question.

We also note that, contrary to defendants' assertion that *Sniadach* is limited to wage garnishments, many recent decisions have liberally applied the principles of that case to invalidate other prejudgment remedies. In *Goldberg* v. *Kelly* (1970) 397 U.S. 254 [25 L.Ed.2d 287, 90 S.Ct. 1011], the United States Supreme Court held that welfare aid could not be terminated without a hearing. (See also *Goliday* v. *Robinson* (N.D.Ill. 1969) 305 F.Supp. 1224, vacated and remanded, sub nom. *Daniel* v. *Goliday* (1970) 398 U.S. 73 [26 L.Ed.2d 57, 90 S.Ct. 1722]; *California Human Resources Dept.* v. *Java* (N.D.Cal. 1970) 317 F.Supp. 875, affd. (1971) 402 U.S. 121 [28 L.Ed.2d 666, 91 S.Ct. 1347].) The three-judge court in *Swarb* v. *Lennox* (E.D.Pa. 1970) 314 F.Supp. 1091, prob. juris. noted (1971) 401 U.S. 991 [28 L.Ed.2d 529, 91 S.Ct. 1220], concluded that Pennsylvania's confession of judgment procedure violates due process, at least where Fifth Amendment protections had not effectively been waived by contract. In *Larson* v. *Fetherston* (1969) 44 Wis.2d 712, 717-719 [172 N.W.2d 20], the Wisconsin Supreme Court held that all prejudgment garnishments are unconstitutional under the *Sniadach* rationale, whatever the nature of the garnished funds. In California *Sniadach* has been applied to void California's wage garnishment statute (*McCallop* v. *Carberry, supra,* 1 Cal.3d 903), to strike down section 1166a insofar as it authorizes the issuance of a writ of immediate possession prior

---

[14]We also find support for our conclusion in Note, *supra,* 68 Mich.L.Rev. 986, 1000-1001.

In *Lawson* v. *Mantell* (1969) 62 Misc.2d 307 [306 N.Y.S.2d 317], the Supreme Court of New York, without finally determining the issue, found that the application of *Sniadach* was sufficiently doubtful so that it deemed it inappropriate to issue a preliminary injunction restraining a creditor from exercising the prejudgment replevin remedies later found unconstitutional in *Laprease* v. *Raymours Furniture Company, supra,* 315 F.Supp. 716.

to a hearing on the merits of an unlawful detainer action (*Mihans* v. *Municipal Court* (1970) 7 Cal.App.3d 479 [87 Cal.Rptr. 17];[15] cf. *Hutcherson* v. *Lehtin* (N.D.Cal. 1970) 313 F.Supp. 1324, 1329-1330, vacated and remanded (1970) 400 U.S. 923 [27 L.Ed.2d 182, 91 S.Ct. 182]; *Bell* v. *Tsintolas Realty Company* (D.C. Cir. 1970) 430 F.2d 474, 479), and to invalidate certain portions of section 1174 which allow a landlord to assert a lien upon his tenant's furniture for amounts due under a lease (*Gray* v. *Whitmore* (1971) 17 Cal.App.3d 1 [94 Cal.Rptr. 904]; cf. *Hall* v. *Garson* (5th Cir. 1970) 430 F.2d 430, 440-441; *Klim* v. *Jones* (N.D.Cal. 1970) 315 F.Supp. 109).[16]

■ While the cases cited above obviously are distinguishable from the present facts, we find in their liberal application of *Sniadach* support for our decision that California's claim and delivery law violates the due process clauses of the Fifth and Fourteenth Amendments of the United States Constitution and section 13 of article I of the California Constitution.

We are faced again, however, with the contention that in most cases the alleged debtor has contractually waived his constitutional protections. Defendants claim that the clause, adverted to before, which is contained in most retained title sales contracts[17] and which purports to give the seller authority to enter and repossess upon default operates to waive the buyer's due process rights. (See *Brunswick Corporation* v. *J & P, Inc., supra,* 424 F.2d 100, 105; *Fuentes* v. *Faircloth, supra,* 317 F.Supp. 954.) ■ For the reasons stated previously in our consideration of whether such clauses operate to waive the alleged debtors' Fourth Amendment rights, we hold that the mere fact that such clauses are exacted in many cases cannot render constitutional the claim and delivery law, which deprives alleged debtors of their right to due process whether or not such a purported waiver has been signed. (See *Swarb* v. *Lennox, supra,* 314 F.Supp. 1091.)

---

[15]Since the *Mihans* decision, section 1166a has been amended.

[16]Although some recent lower court decisions have upheld the constitutionality of California's attachment statute (*Western Bd. of Adjusters, Inc.* v. *Covina Pub., Inc.* (1970) 9 Cal.App.3d 659, 674 [88 Cal.Rptr. 293]; *Northern California Collection Service, Inc.* v. *Randone,* Sacramento Superior Court No. 203519 (App.Dept. 1970)), on March 16, 1971, we issued an alternative writ of mandate in *Randone* v. *Superior Court,* Sac. 7885, in order to give more thorough consideration to the question.

[17]In one of the contracts attached to a declaration in opposition to the motion for summary judgment, we find the following example of such a clause: "Should Buyer fail to pay said indebtedness or any part thereof when due, or breach this contract . . .. Seller, at his option, and without notice to Buyer, may declare the whole amount unpaid immediately due and payable, or Seller may, without notice or demand, by process of law or otherwise, take possession of said chattels wherever located."

Defendants next contend that no injunction whatever should issue in this case because in some instances the execution of claim and delivery process does not violate either the Fourth or the Fifth Amendment protections. ▇▇▇ We concede that there may be exceptional situations in which creditor or state interests justify claim and delivery procedure or in which consent to such procedure is validly obtained. However, we cannot agree that this possibility prevents us from affirming the trial court's issuance of the injunction.

▇▇▇ It is, of course, an accepted principle of judicial review that "courts will limit the operation of a statute by construction or severance of the language to avoid unconstitutionality. Where, however, unconstitutionality cannot reasonably be avoided in this way, a statute cannot be upheld merely because a particular factual situation to which it is applicable may not involve the objections giving rise to its invalidity. [Citations.] If the rule were otherwise, the determination of constitutionality would be a piecemeal and unpredictable process." (*People* v. *Stevenson* (1962) 58 Cal.2d 794, 798 [26 Cal.Rptr. 297, 376 P.2d 297].)

▇▇▇ If the scope of a statute cannot be limited to situations to which it may constitutionally apply except "by reading into it numerous qualifications and exceptions" amounting "to a wholesale rewriting of the provision," the statute cannot be saved by judicial construction but must be declared invalid. (*Fort* v. *Civil Service Commission* (1964) 61 Cal.2d 331, 340 [38 Cal.Rptr. 625, 392 P.2d 385].) "This court cannot, as already pointed out, in the exercise of its power to interpret, rewrite the statute. If this court were to insert in the statute all or any of the above qualifying provisions, it would in no sense be interpreting the statute as written, but would be rewriting the statute in accord with the presumed legislative intent. That is a legislative and not a judicial function." (*Seaboard Acceptance Corp.* v. *Shay* (1931) 214 Cal. 361, 369 [5 P.2d 882]; see *In re King* (1970) 3 Cal.3d 226, 237 [90 Cal.Rptr. 15, 474 P.2d 983].) ▇▇▇ Furthermore, as we have repeatedly stated: "when the application of the statute is invalid in certain situations we cannot enforce it in other situations if such enforcement entails the danger of an uncertain or vague future application of the statute . . . . We have been particularly aware of fomenting such danger of uncertainty in the application of a statute which would inhibit the exercise of a constitutional right . . . ." (*Franklin Life Ins. Co.* v. *State Board of Equalization* (1965) 63 Cal.2d 222, 227-228 [45 Cal.Rptr. 869, 404 P.2d 477], quoted in *Mulkey* v. *Reitman* (1966) 64 Cal.2d 529, 543-544 [50 Cal.Rptr. 881, 413 P.2d 825], affd. sub nom. *Reitman* v. *Mulkey* (1967) 387 U.S. 369 [18 L.Ed.2d 830, 87 S.Ct. 1627]; *San Francisco Unified School Dist.* v. *Johnson* (1971) 3 Cal.3d 937, 955-956 [92 Cal.Rptr. 309, 479 P.2d

669], cert. den. (1971) 401 U.S. 1012 [28 L.Ed.2d 549, 91 S.Ct. 1266].)

As our previous discussion indicates, the claim and delivery law is unconstitutional in many of its applications. It is not possible for us to narrow its scope solely to constitutional applications without completely redrafting its provisions nor can we eliminate its unconstitutional features merely by excising certain clauses or sections. Instead, in order to create a constitutional prejudgment replevin remedy, there must be provision for a determination of probable cause by a magistrate and for a hearing prior to any seizure, except in those few instances where important state or creditor interests justify summary process. No such safeguards can by any reasonable construction be found in sections 509 through 521; nor do those sections provide any clue as to which state or creditor interests are sufficiently important to warrant summary procedures. Consequently, we are compelled to invalidate the statute in its entirety and await a legislative redrafting.

*County of Los Angeles* v. *Superior Court* (1967) 253 Cal.App.2d 670, 679-680, 683-684 [62 Cal.Rptr. 435] does contain language which, if taken out of context, may appear to support defendants' position that an injunction should not issue because claim and delivery process may be constitutionally invoked in some instances. Nevertheless, that case is clearly distinguishable. There the Court of Appeal issued a writ of prohibition to interdict the issuance of an injunction which would have restrained the police from publishing all but the briefest pretrial statements in criminal cases. The court noted the fine line that must be drawn between the freedom of speech and the right to a fair trial, and it concluded that in some cases more extensive pretrial publicity is warranted. Since the injunction would have forbidden even such proper pretrial publicity, the Court of Appeal struck it down. The case stands for the proposition that in areas where two vital constitutional rights are in conflict, the problems cannot be solved on a wholesale basis by an injunction but must be resolved on a case-by-case basis.

The present case involves no such delicate balancing of constitutional rights; hence, *County of Los Angeles* v. *Superior Court* is inapplicable. Most laws or governmental programs may conceivably be applied constitutionally in some cases; therefore, if we were to hold that no injunction could issue unless every conceivable application of the statute or activity were unconstitutional, we would greatly diminish the remedial effect of section 526a.

An injunction is particularly appropriate in this case for no other remedy would give effective relief to the majority of persons whose property was

illegally seized. In most cases, the defendant would be unable to obtain any relief prior to the seizure of his property. But as we have seen the removal of his goods often occasions irreparable harm. No judicial remedy can restore the privacy shattered by an illegal search. Nor can the subsequent return of property compensate for or repair the suffering caused a family by temporary loss of appliances indispensable to its day to day living. A post-seizure remedy in such cases grants no effective relief; hence, the preventive remedy afforded by the instant injunction is particularly appropriate.

Of course, by our decision we do not foreclose the Legislature from enacting new prejudgment replevin remedies in conformity with the constitutional principles discussed herein. As we have indicated above, claim and delivery may be limited to those cases where the state or creditor interests outweigh the due process rights of those from whom the property is seized. Or the Legislature may choose to expedite the hearing procedure to assure that the defendant is afforded his day in court before the property is seized. The Legislature may provide for the issuance of appropriate process on probable cause to enable public officials to seize property without violating Fourth Amendment rights. Obviously, it is not within our judicial province to prescribe which of the multitude of possible, constitutional procedures for prejudgment claim and delivery relief should be adopted; that is a proper task for the Legislature.

Finally, having in mind the legal principles already discussed and the conclusions we have reached, we consider whether summary judgment was properly granted in this case. The purpose of summary judgment is to determine whether or not a genuine factual controversy exists between the litigants and if not, to resolve the dispute without a full-scale trial, the avoidance of which is "a matter of judicial economy and sound social policy." (Fn. omitted.) (Bauman, *California Summary Judgment: A Search for a Standard* (1963) 10 U.C.L.A. L.Rev. 347, 349.) "The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial." (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].) The court, of course, may not decide the factual issue itself. (*R. D. Reeder Lathing Co.* v. *Allen* (1967) 66 Cal.2d 373, 376 [57 Cal.Rptr. 841, 425 P.2d 785].) Thus, if on a motion for summary judgment a single issue of fact is found, the trial court may not proceed but must allow such issue to be tried. (*Walsh* v. *Walsh* (1941) 18 Cal.2d 439, 441 [116 P.2d 62].)

Well-settled principles ensure that this summary procedure is confined to its proper role and does not become a "substitute for the open trial

method of determining facts." (*Stationers Corp. v. Dun & Bradstreet, Inc., supra,* 62 Cal.2d 412, 417.) ▮ Thus, summary judgment is appropriate only if the facts upon which the motion is based are sufficient to sustain a judgment in favor of the moving party and if the party opposing the motion does not, by affidavit, show facts sufficient to raise a triable issue. ▮ "In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion." (*Stationers Corp. v. Dun & Bradstreet, Inc., supra,* at p. 417.)

▮ ▮ Applying these principles to the present case, we conclude that the trial court did not err in rendering summary judgment because there is no triable issue of fact. Plaintiffs' declarations in support of their motion for summary judgment establish that they are citizens[18] and that they reside in the County of Los Angeles.[19] Such declarations also show that within one year prior to the commencement of this action plaintiffs were assessed and paid real property taxes to the County of Los Angeles.[20] Defendants have in their answer to the first amended complaint admitted that they are county officers and that they and their deputies execute claim and delivery process. As the preceding discussion has shown, the execution of claim and delivery process violates the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and the parallel provisions of sections 13 and 19 of article I of the California Constitution. Since defendants' activities[21] are directed to the enforcement and execution of

---

[18]Defendants contend that plaintiffs' averment of their citizenship is defective because it is "purely conclusionary." However, it is difficult to conceive how one might within a reasonable compass set forth the specific facts which entitle him to claim citizenship in the United States or California. In a case such as this where the issue of citizenship is neither hotly contested nor of crucial importance, the allegation made by plaintiffs suffices to establish citizenship for purposes of summary judgment. (See Bauman, *supra,* 10 U.C.L.A. L.Rev. 347, 353.)

[19]Defendants contend that plaintiffs fail to establish that they were residents of the County of Los Angeles at the commencement of this action. No such fact need be established to entitle plaintiffs to relief under section 526a. (*Irwin v. City of Manhattan Beach, supra,* 65 Cal.2d 13, 18-20.)

[20]Defendants contend that the tax collector certificates attached as exhibits to the declarations are not certified and therefore are not admissible. Plaintiffs have, however, sufficiently averred in the body of the declarations that they have been assessed and paid real property taxes to the county. Whether or not the tax collector certificates are admissible, the declarations are sufficient to establish that plaintiffs are taxpayers.

[21]As we have shown above, the mere expenditure of the time of county officers is a sufficient expenditure of public funds to be subject to injunction under section 526a. (*Wirin v. Horrall, supra,* 85 Cal.App.2d 497, 504-505.) It is therefore unnecessary to establish the amount of county funds expended on execution of claim

claim and delivery process which has been shown to be violative of both the United States and California Constitutions, plaintiffs were entitled to summary judgment and to the issuance of an injunction under section 526a.[22]

The judgment is affirmed.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.

---

and delivery process or the amount of such costs defrayed by fees charged those who initiate claim and delivery procedure. (*Wirin* v. *Parker, supra,* 48 Cal.2d 890, 894.)

[22]As previously pointed out, the judgment enjoins defendants from (1) taking or seizing personal property under color of the claim and delivery law unless after prior notice and judicial hearing; and (2) entering any private dwelling, commercial establishment, private vehicle or other location not otherwise enterable without a search warrant for the purpose of searching for or seizing any personal property pursuant to said law unless first establishing before a magistrate probable cause to believe that the property is on the premises and that the alleged creditor has a right to its immediate possession. While such provisions of the injunction are internally consistent and in harmony with the trial judge's rationale, as a practical matter there are no saving procedures available to defendants dealing with prior notice and judicial hearing or with the showing of probable cause prior to entry. The claim and delivery law contains no such procedures. Since no other statutes appear to be utilizable, the saving procedures contemplated by the injunction must await further action by the Legislature. In view of these circumstances and of the fact that plaintiffs have not appealed, we do not modify the judgment.