[No. B025876. Second Dist., Div. Two. May 2, 1988.]

JOYCE FISKE et al., Plaintiffs and Respondents, v.
ROXANI M. GILLESPIE, as Insurance Commissioner, etc.,
Defendant and Appellant.

COUNSEL

John J. Faber and Paul M. Geary for Defendant and Appellant.

Carol A. Sobel, Joan W. Howarth, Paul L. Hoffman, Deborah A. Ellis, Isabelle Katz Pinzler, Joan E. Bertin and Mark D. Rosenbaum for Plaintiffs and Respondents.

Marsha Levick, Sara E. Burns, Bill Lann Lee and Lisa Foster as Amici Curiae on behalf of Plaintiffs and Respondents.

OPINION

**ROTH, P. J.**—The Commissioner of the California Department of Insurance appeals from a judgment enjoining her from expending funds to enforce the provisions of Insurance Code section 790.03, subdivision (f), part of the state's legislative regulation of trade practices in the business of insurance. (See Ins. Code, § 790.) Section 790.02 prohibits all unfair methods of competition and unfair or deceptive acts or practices in the business of insurance. The various subdivisions of section 790.03 define some of such acts and practices. Subdivision (f) defines one such prohibited act or prac-

tice as the setting by an insurer of premiums, rates, dividends, or benefits for life insurance and annuities at the same rates for both men and women. The provision requires insurers to establish different rates for men and women, except as prohibited by federal law.

Respondents filed a taxpayers' action (Code Civ. Proc., § 526a) for declaratory and injunctive relief, contending the statute, by mandating a classification by gender, denies men and women the equal protection of the laws guaranteed by the Constitutions of California and of the United States. Respondents' motion for summary judgment was granted, and this appeal followed.[1]

■■■ At the outset, appellant contends the action is not a proper taxpayers' suit and does not present an actual controversy. Because these contentions are well taken, it is unnecessary to reach the constitutional question.

■■■ The courts of this state are not empowered to render advisory opinions to satisfy the curiosity of parties motivated by reasons ulterior to resolution of an actual dispute. (*People* ex rel. *Lynch* v. *Superior Court* (1970) 1 Cal.3d 910 [83 Cal.Rptr. 670, 464 P.2d 126]; *Younger* v. *Superior Court* (1978) 21 Cal.3d 102, 118-120 [145 Cal.Rptr. 674, 577 P.2d 1014]; *Pacific Legal Foundation* v. *California Coastal Com.* (1982) 33 Cal.3d 158, 169-174 [188 Cal.Rptr. 104, 655 P.2d 306].) ■■■ Here respondents do not claim to have any dispute with appellant (or with anyone else) over unfair practices in connection with life insurance or annuities. This action is merely a general challenge to a statute, posed in a vacuum; no specific application of the statute is involved. It would serve little purpose to repeat the principles of justiciability set forth in the cases just cited; it is clear enough that this action presents no actual controversy apart from the respondents' intense but abstract desire to see the statute declared violative of the constitutional guarantees of equal protection.

Respondents, however, argue the action is justiciable both as a declaratory judgment action and as a taxpayers' suit. Neither argument has merit.

---

[1] The appeal is from a minute order granting the motion for summary judgment and ordering an injunction. An order granting an injunction is appealable (Code Civ. Proc., § 904.1, subd. (f)), but an order granting a motion for summary judgment motion is not. (See Code Civ. Proc., § 437c, subd. (*l*); *Integral Land Corp.* v. *Anderson* (1944) 62 Cal.App.2d 770 [145 P.2d 364].)

To avoid unnecessary delay, however, and because the trial court's intention was clear, we treat the order granting the motion as a judgment rather than send the case back to the trial court for entry of judgment. (See *Tsarnas* v. *Bailey* (1960) 179 Cal.App.2d 332, 337 [3 Cal.Rptr. 629]; but see *Cohen* v. *Equitable Life Assurance Society* (1987) 196 Cal.App.3d 669, 671 [242 Cal.Rptr. 84].)

The statute authorizing declaratory judgments is explicitly limited to "cases of actual controversy." (Code Civ. Proc., § 1060.) It thus does not expand the concept of justiciability sufficiently to encompass this action.

The taxpayer action statute authorizes an action for an injunction against "any illegal expenditure of, waste of, or injury to" public funds. (Code Civ. Proc., § 526a.)[2] The cause of action created by this statute, however, requires actual expenditure, or at the least a threat of actual expenditure, of public funds, if only in small amounts. (*City of Compton* v. *Bunner*▮ (Cal.App.).) Here, appellant specifically denied the existence of any actual or prospective activities to enforce the statute, and respondents did not attempt to demonstrate otherwise.

The Supreme Court cases applying a liberal construction of section 526a involved more acute controversies than the present case. (*Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 267-270 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206] (denial of procedural due process in claim and delivery statute); *Van Atta* v. *Scott* (1980) 27 Cal.3d 424, 447-450 [166 Cal.Rptr. 149, 613 P.2d 210] (legality of statutes and of procedures employed by police and courts in setting bail); *Arrieta* v. *Mahon* (1982) 31 Cal.3d 381, 386-387 [182 Cal.Rptr. 770, 644 P.2d 1249] (court process used by county marshal to evict nonparties).) In *Van Atta,* the trial took seven days, and in *Arrieta* the taxpayer-plaintiff was herself a victim of the eviction policy she challenged. In all three cases public officers were involved in continual implementation of the statute or policy under attack; amici curiae appeared on appeal to support the defense; and the challenged statute or policy was one regulating operation of the judicial process. None of these features is found in the present case.

Though we do not suggest this action is the product of actual collusion between respondents and appellant, it does bear the earmarks of an action not involving a true controversy. Appellant's answer to the complaint denied both that she contended the statute is constitutional and that any controversy existed between her department and respondents. Appellant also averred a lack of opposition to respondents' prayer for a declaratory judgment and an injunction. Appellant, in opposing the summary judgment motion, did not tender any disputed facts; instead she in effect stipulated that no material facts were in dispute. Respondents showed no interest in obtaining an appealable judgment and a formal injunction; appellant rushed to this court via a premature notice of appeal (see fn. 1, *ante*); and respon-

---

[2] This form of action has been permitted against state officials. (See *Central Valley Chap. 7th Step Foundation* v. *Younger* (1979) 95 Cal.App.3d 212, 232 [157 Cal.Rptr. 117].)

dents made no effort to preserve their trial court victory by contesting the appeal on procedural grounds. In addition, the difficulty of rendering an opinion in a factual vacuum[3] is exacerbated here by the absence of any party with a true incentive and will to present arguments supporting the validity of the statute. ■ This consideration is particularly significant when evaluated in light of the well-established principle of judicial self-restraint, according to which courts must refrain from deciding constitutional questions unless absolutely required to do so. (E.g., *People* v. *Marsh* (1984) 36 Cal.3d 134, 144 [202 Cal.Rptr. 92, 679 P.2d 1033].)

The judgment is reversed, and the cause is remanded to the trial court with directions to dismiss the action. Each party to bear its own costs.

Compton, J., and Gates, J., concurred.

---

[3] The absence of factual content in this appeal also blocks any perspective on the various real disputes that could arise under the statute. These might include, for example, litigation concerning the imposition of administrative discipline on an insurer for violating the statute; the proper interpretation and application of the statutory clause referring to "differentials . . . substantially supported by valid pertinent data segregated by sex"; the rights and obligations arising from an actual policy issued in alleged violation of the statute; and the availability of administrative remedies to an aggrieved insurer or policyholder.