53 Cal.Rptr.3d 203 (2007)
146 Cal.App.4th 739
Ward CONNERLY, Plaintiff and Respondent,
v.
Arnold SCHWARZENEGGER, as Governor, etc., et al., Defendants and Appellants.
No. C050204.
Court of Appeal of California, Third District.
January 10, 2007.
*205 Bill Lockyer, Attorney General, Louis R. Mauro, Senior Assistant Attorney General, Catherine Van Aken and Michelle Mitchell Lopez, Deputy Attorneys General, for Defendants and Appellants.
*206 Pacific Legal Foundation, John H. Findley and Paul J. Beard II for Plaintiff and Respondent.
*204 BUTZ, J.
With the passage of Proposition 209 in 1996, California voters added section 31 to article I of the California Constitution (hereafter article I, section 31), outlawing all state discrimination or preferences based on race, gender or national origin. In 2003, the Legislature responded by enacting Government Code section 8315,[1] which attempted to graft onto article I, section 31 a definition of "racial discrimination" that excluded "special measures" taken to secure advancement for certain racial or ethnic groups. Ward Connerly, as a taxpayer and citizen of California, filed a lawsuit in December 2003 against the Governor and Attorney General (defendants), seeking two remedies: (1) a judicial declaration that section 8315 is invalid as in conflict with article I, section 31, and (2) a permanent injunction preventing defendants from implementing or enforcing section 8315.
While this lawsuit was pending, this court decided C & C Construction, Inc. v. Sacramento Municipal Utility Dist. (2004) 122 Cal.App.4th 284, 18 Cal.Rptr.3d 715 (C & C Construction), in which we held that section 8315's definition of "discrimination" was ineffective because it conflicted with the plain meaning of that term set forth in article I, section 31 and interpreted by the California Supreme Court. (C & C Construction, at p. 303, 18 Cal.Rptr.3d 715.) The Supreme Court denied review in C & C Construction and the parties here agree that section 8315 is, for all purposes, invalid and unenforceable.
Defendants moved for judgment on the pleadings, claiming that there was no case in controversy and that Connerly has no standing to pursue this action. Connerly maintained he had taxpayer, citizen or "voter" standing to seek a court order prohibiting defendants from enforcing the statute. Agreeing with the voter standing argument, the court granted Connerly's cross-motion for judgment on the pleadings, issuing a judgment declaring the statute void and prohibiting defendants from enforcing it.
We shall reverse the judgment and direct the trial court to dismiss the action. With the finality of C & C Construction and defendants' acceptance of its holding, there is no longer a justiciable controversy surrounding section 8315. Moreover, absent allegations demonstrating that defendants are enforcing or threatening to enforce section 8315, there is no basis upon which to issue an injunction.

FACTUAL AND PROCEDURAL BACKGROUND

A. Proposition 209 and Section 8315
Article I, section 31 (added by the 1996 adoption of Proposition 209) states in subdivision (a): "The state shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, or public contracting."
Subdivision (g) of article I, section 31 provides that "[t]he remedies available for violations of this section shall be the same, regardless of the injured party's race, sex, color, ethnicity, or national origin, as are otherwise available for violations of then-existing California antidiscrimination law."
In Hi-Voltage Wire Works, Inc. v. City of San Jose (2000) 24 Cal.4th 537, 101 *207 Cal.Rptr.2d 653, 12 P.3d 1068, the California Supreme Court construed the term "discriminate" in article I, section 31 as follows: "`[Discriminate' means `to make distinctions in treatment; show partiality (in favor of) or prejudice (against)' [citation]; `preferential' means giving `preference,' which is `a giving of priority or advantage to one person ... over others.'" (Id. at pp. 559-560,101 Cal.Rptr.2d 653,12 P.3d 1068.)
Three years after Hi-Voltage was decided, the Legislature passed and the Governor signed into law section 8315, which purports to define "racial discrimination" for the purpose of interpreting article I, section 31. (Stats.2003, ch. 211, § 2.)
Subdivision (a) of section 8315 provides that the term "racial discrimination" in article I, section 31 "shall have the same meaning as the term `racial discrimination' as defined and used in ... the International Convention on the Elimination of All Forms of Racial Discrimination [hereafter, the Convention]...." Subdivision (b) of section 8315 reproduces parts of the Convention's definition of "racial discrimination." After initially prescribing a definition similar to the one in Hi-Voltage, it goes on to provide: '"Special measures taken for the sole purpose of securing adequate advancement of certain racial or ethnic groups or individuals requiring such protection as may be necessary in order to ensure such groups or individuals equal enjoyment or exercise of human rights and fundamental freedoms shall not be deemed racial discriminatio n ...."' (§ 8315, subd. (b)(4), italics added.) Thus, under section 8315, the definition of "racial discrimination" includes exceptions not found in the Hi-Voltage definition, i.e., "special measures" which help certain racial and ethnic groups equally enjoy the "exercise of human rights and fundamental freedoms."
Subdivision (c)(1) of section 8315 states that article I, section 31 "shall not be interpreted as granting an individual a private cause of action to challenge any special measures undertaken for the purpose of securing adequate advancement of those racial groups requiring ... protection.... Special measures shall not be interpreted as preferential treatment." It also allows the government to proceed with "special measures" without proving prior racial discrimination.

B. Connerly's Suit
Characterizing himself as a "citizen and taxpayer" of this state, Connerly filed the present lawsuit against the Governor and the Attorney General (collectively defendants), seeking to prevent them from implementing or enforcing section 8315. The first amended complaint alleged that, by adopting the Convention's definition of "discrimination" to interpret Proposition 209, a definition in fatal conflict with the one enunciated by the California Supreme Court in Hi-Voltage, supra, 24 Cal.4th 537, 101 Cal.Rptr.2d 653, 12 P.3d 1068, section 8315 was an unlawful attempt to amend a constitutional provision by enacting a statute. It was also alleged that section 8315, subdivision (c)'s prohibition on private actions based on the use of "special measures" was inconsistent with article I, section 31, subdivision (g), which contains no such bar.
Connerly's prayer for relief sought (1) a declaration that section 8315 is "unconstitutional, invalid, and unenforceable" and (2) an injunction restraining defendants from enforcing it.

C. Defendants Demur and Connerly Amends His Complaint
Defendants filed a demurrer to the first amended complaint, challenging Connerly's standing to bring the suit. The trial court sustained the demurrer, rejecting *208 Connerly's theories of taxpayer and citizen standing. However, the court granted Connerly leave to amend the complaint to allege other facts that would entitle him to standing.
Connerly then filed a second amended complaint (SAC), essentially repeating the allegations of the first amended complaint but also averring that he had the right to vote on section 8315 as a "substantial amendment" of article I, section 31, and that, by failing to submit the statute to the voters, the Legislature had denied him a "fundamental liberty interest" in violation of the California Constitution.

D. C & C Construction Is Decided
After Connerly filed the SAC but before defendants filed an answer, this court filed its opinion in C & C Construction, supra, 122 Cal.App.4th 284, 18 Cal.Rptr.3d 715. In that case, a contractor sued a municipal utility district alleging that the utility engaged in preferential discrimination in its contracting. While the case was pending, section 8315 was enacted. After receiving supplemental briefing by the parties concerning the effect of section 8315, we held that its definition of "discrimination" to allow for "special measures" was invalid, because it conflicted with the meaning of the term "discrimination" set forth in article I, section 31 and the construction placed on it by the California Supreme Court in Hi-Voltage, supra, 24 Cal.4th 537, 101 Cal.Rptr.2d 653, 12 P.3d 1068. We thus characterized section 8315 as an invalid attempt by the Legislature and the Governor to amend the state Constitution without complying with proper procedures for amendment. (C & C Construction, supra, at pp. 300-302,18 Cal.Rptr.3d 715.)
E. The Trial Court Rules on Cross-motions for Judgment on the Pleadings
The California Supreme Court denied review in C & C Construction on December 15, 2004. (C &C Construction, supra, 122 Cal.App.4th at p. 325, 18 Cal.Rptr.3d 715.) Defendants answered the SAC and in April 2005, each party filed a motion for judgment on the pleadings. Defendants continued to assert that Connerly lacked standing and added that, as a result of our decision in C & C Construction, there was no longer an actual controversy. In addition to reasserting taxpayer and citizen standing, Connerly asserted he had standing because the enactment of section 8315 without an opportunity to vote on it as an amendment to the state Constitution deprived him of "one of the most cherished of all rights," the right to vote.
The trial court granted Connerly's motion and denied the defendants' motion. While again rejecting Connerly's claims of taxpayer and citizen standing, the court determined that he had standing as a voter to challenge section 8315 as an unconstitutional attempt to amend article I, section 31. Relying on C & C Construction, the court declared section 8315 unconstitutional. Noting also that C & C Construction did not address the constitutionality of section 8315, subdivision (c)'s prohibition on private actions, the court found subdivision (c) equally unconstitutional. Accordingly, the court entered judgment granting the declaratory and injunctive relief Connerly had sought.

DISCUSSION

I. Standard of Review
"A motion for judgment on the pleadings is the equivalent of a demurrer made after the pleadings are in." (Columbia Casualty Co. v. Northwestern Nat. Ins. Co. (1991) 231 Cal.App.3d 457, 463, 282 Cal.Rptr. 389.) "The standard of appellate review of a judgment on the pleadings is, *209 therefore, identical to that on a judgment following the sustaining of a demurrer." (Barker v. Hull (1987) 191 Cal.App.3d 221, 224, 236 Cal.Rptr. 285.) A demurrer admits all material and issuable facts pleaded in the complaint, amplified by matters of which judicial notice may be taken such as court records (ibid.), and the concessions of a pleader. (Columbia Casualty Co., supra, 231 Cal.App.3d at p. 463, 282 Cal. Rptr. 389.)

II. Case in Controversy Requirement
Courts do not decide abstract questions of law. An indispensable element to jurisdiction is that there be an actual controversy between parties who have an adversarial interest in the outcome of the litigation. As the California Supreme Court explained nearly a century and a half ago: "When questions are presented in good faith in the regular course of honest litigation, and are necessary to the determination of the case, we shall not hesitate to decide them; but it is no part of our duty to investigate and decide questions not regularly arising in the due course of litigation, for the gratification of the curiosity of counsel, or to serve some ulterior purpose of parties who choose to procure them to be raised against themselves by others who feel no interest in the contest." (People v. Pratt (1866) 30 Cal. 223,225.)
Through this lawsuit, Connerly seeks two judicial remedies: (1) a declaration that all of section 8315 is unconstitutional and (2) a permanent injunction restraining the Governor and Attorney General from enforcing it. For the reasons that follow, we conclude that neither remedy is available here.

A Declaratory Relief
Code of Civil Procedure section 1060 provides: "Any person ... who desires a declaration of his or her rights or duties with respect to another, ... may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action ... in the superior court...." (Italics added.) "Thus, declaratory relief is appropriate only where there is an actual controversy, not simply an abstract or academic dispute." (Newland v. Kizer (1989) 209 Cal. App.3d 647, 657, 257 Cal.Rptr. 450; see also Fiske v. Gillespie (1988) 200 Cal. App.3d 1243, 1246, 246 Cal.Rptr. 552 (Fiske).)
No actual controversy exists in this case. As we have noted, C & C Construction definitively determined that section 8315's definition of discrimination is inconsistent with Proposition 209 and amounted to an ineffectual attempt to amend the state Constitution. The California Supreme Court, which is "the final authority on interpretation of the state Constitution" (C & C Construction, supra, 122 Cal.App.4th at p. 302, 18 Cal.Rptr.3d 715), denied review in C & C Construction in December 2004. Defendants readily acknowledged in the trial court and on appeal that C &C Construction constituted a binding appellate pronouncement that the statute is unconstitutional. Therefore, any dispute over the constitutionality of section 8315 that might have existed when this lawsuit was filed in September 2003 surely no longer existed by the time the trial court granted Connerly's motion for judgment on the pleadings in May 2005.[2] *210 C & C Construction is binding on and must be followed by all trial courts of this state. (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455, 20 Cal.Rptr. 321, 369 P.2d 937.) It was an idle and superfluous act for the trial court to issue a declaratory judgment that merely restates the holding of C & C Construction. (Civ.Code, § 3532.)
It is true, as the trial court noted, that C & C Construction did not directly address the constitutionality of subdivision (c) of section 8315, which forbids actions by private individuals seeking to challenge the "special measures" authorized in subdivision (a). But subdivision (c) no longer retains any vitality in the aftermath of C & C Construction. Since subdivision (a) has been declared unconstitutional, subdivision (c), which has no independent force but exists only to enforce subdivision (a) procedurally, is equally invalid. "`[I]f the statute is not severable, then the void part taints the remainder and the whole becomes a nullity.'" (Santa Barbara Sch. Dist. v. Superior Court (1975) 13 Cal.3d 315, 330, 118 Cal.Rptr. 637, 530 P.2d 605.)
Even if a cause of action for declaratory relief regarding the constitutionality of subdivision (c) were to lie, the Governor and Attorney General would not be proper parties. Subdivision (c) bars actions by private individuals who seek to challenge "special measures" to combat discrimination. As public officers, defendants have no control over the commencement of private actions. Courts will not entertain a declaratory relief action "the sole object of which is to settle rights of third persons who are not parties." (Golden Gate Bridge etc. Dist. v. Felt (1931) 214 Cal. 308, 316, 5 P.2d 585.)
We conclude Connerly's declaratory relief cause of action seeks adjudication of a moot, abstract question without an actual controversy between truly adversarial parties.[3]

B. Injunctive Relief
An "[injunction is an equitable remedy available to a person aggrieved by certain torts or other wrongful acts (5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 778, p. 235, italics added and omitted.) The fact that a void law is on the books is not sufficient, by itself, to *211 justify the issuance of an injunction. (Golden Gate S. T., Inc. v. San Francisco (1937) 21 Cal.App.2d 582, 584, 69 P.2d 899.) To obtain an injunction, a party must show injury as to himself. "To have standing, a party must be beneficially interested in the controversy; that is, he or she must have `some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large.'" (Holmes v. California Nat. Guard (2001) 90 Cal.App.4th 297, 315, 109 Cal. Rptr.2d 154, quoting Carsten v. Psychology Examining Com. (1980) 27 Cal.3d 793, 796, 166 Cal.Rptr. 844, 614 P.2d 276.)
Connerly does not allege any facts showing that he has or will suffer particularized injury as a result of the enforcement or threatened enforcement of Government Code section 8315. Instead, he relies on Code of Civil Procedure section 526a, which allows a taxpayer the right to bring an action to restrain an illegal expenditure of public money without a showing of special injury. (Blair v. Pitchess (1971) 5 Cal.3d 258, 269, 96 Cal.Rptr. 42, 486 P.2d 1242.)[4]
The goal of Code of Civil Procedure section 526a taxpayer standing is the necessity of prompt action to "`prevent irremediable public injury"' (Ahlgren v. Carr (1962) 209 Cal.App.2d 248, 252, 25 Cal.Rptr. 887), i.e., the unlawful or illegal expenditure of public funds (Waste Management of Alameda County, Inc. v. County of Alameda (2000) 79 Cal.App.4th 1223, 1240, 94 Cal.Rptr.2d 740). But, as we stated in Waste Management, "[t]he taxpayer action must involve an actual or threatened expenditure of public funds. [Citation.] [1] General allegations, innuendo, and legal conclusions are not sufficient [citation]; rather, the plaintiff must cite specific facts and reasons for a belief that some illegal expenditure or injury to the public fisc is occurring or will occur." (Ibid., italics added; accord, Fiske, supra, 200 Cal.App.3d at p. 1246, 246 Cal.Rptr. 552.)
"For a lawsuit properly to be allowed to continue, standing must exist at all times until judgment is entered and not just on the date the complaint is filed." (Californians for Disability Rights v. Mervyn's, LLC (2006) 39 Cal.4th 223, 232-233, 46 Cal.Rptr.3d 57, 138 P.3d 207.) Where, as here, section 8315 has been successfully *212 challenged in other litigation and a final decision by an appellate court has rendered it null and void, the purpose of allowing taxpayer standing to challenge it is absent.
The SAC is devoid of allegations establishing that defendants have or are about to waste taxpayer funds by attempting to enforce section 8315. Instead, Connerly's request for an injunction rests entirely on speculation that defendants might try to enforce a statute that has already been declared unconstitutional. However, injunctions cannot be predicated on the proponent's fear of something that may happen in the future. (Korean Philadelphia Presbyterian Church v. California Presbytery (2000) 77 Cal.App.4th 1069, 1084, 92 Cal.Rptr.2d 275; see also Cohen v. Board of Supervisors (1986) 178 Cal. App.3d 447, 454,225 Cal.Rptr. 114.)
In Lee v. Gates (1983) 141 Cal.App.3d 989, 190 Cal.Rptr. 682 (Lee) the Court of Appeal was confronted with a fact situation quite similar to the one before us. There, employers and employees of various clubs and bars sought and obtained an injunction preventing city law enforcement officers from enforcing city ordinances that regulated nude entertainment. (Id. at p. 991, 190 Cal.Rptr. 682.) While the case was on appeal the California Supreme Court issued its decision in Morris v. Municipal Court (1982) 32 Cal.3d 553, 186 Cal.Rptr. 494, 652 P.2d 51, which all parties agreed rendered the city code sections unconstitutional. In the meantime, the city had declared a moratorium on enforcement of the ordinances, even though they had not been amended or repealed. (Lee, supra, 141 Cal.App.3d at pp. 991-992, 190 Cal.Rptr. 682.) When the case was transferred to the Court of Appeal for reconsideration in light of Morris, the city asked that the judgment be reversed and the case dismissed, since there was no longer any danger of enforcement. (Id at p. 992, 190 Cal.Rptr. 682.) The plaintiffs insisted that the injunction was still necessary since "the enforcement or nonenforcement [of the ordinances] is entirely dependent on the discretion of the city." (Ibid.)
The Lee court reversed the judgment, with directions to dismiss the case. (Lee, supra, 141 Cal.App.3d at p. 994, 190 Cal. Rptr. 682.) Citing case authority holding that there is no equitable reason for an injunction where the conduct to be proscribed has, in good faith, been discontinued and there is no evidence that the acts will recur (id, at p. 993, 190 Cal.Rptr. 682, citing People v. National Association of Realtors (1981) 120 Cal.App.3d 459, 476, 174 Cal.Rptr. 728 and Palo Alto-Menlo Park Yellow Cab Co. v. Santa Clara County Transit Dist. (1976) 65 Cal.App.3d 121, 135 Cal.Rptr. 192), the Court of Appeal held that the California Supreme Court's decision in Morris had "so changed circumstances that it is unnecessary to grant an injunction." (Lee, supra, at p. 994, 190 Cal.Rptr. 682.)
The principles of Lee apply with even greater force here, since a final appellate decision declaring the statute unconstitutional was issued before the trial court issued its injunction. At no time after C & C Construction did defendants threaten to defy its holding by attempting to enforce section 8315. To the contrary, defendants have admitted that C & C Construction binds them and all state agencies.
There is a presumption that state officers will obey and follow the law. (Environmental Protection Information Center, Inc. v. Maxxam Corp. (1992) 4 Cal. App.4th 1373, 1382, 6 Cal.Rptr.2d 665.) Connerly pleaded no facts showing that defendants would not conduct themselves in conformance with the holding of C & C Construction. Without a threat of present or future injury, no injunction can He. *213 (See Blumhorst v. Jewish Family Services of Los Angeles (2005) 126 Cal.App.4th 993, 1004, 24 Cal.Rptr.3d 474 (Blumhorst).)

III. Voter Standing
Although the foregoing analysis is sufficient to compel reversal of the judgment, we briefly address Connerly's assertion and the trial court's finding that he had standing to seek an injunction against the implementation of section 8315 because it infringes on his right to vote.[5]
Connerly claims that because the Legislature enacted section 8315 without going through the proper procedures for amending the state Constitution, "his right, as a California elector, to vote on the amendment of the California Constitution," has been violated.
Despite at least three opportunities to do soin the trial court, in his respondent's brief, and in response to questions from this court at oral argument, Connerly has failed to cite a single state or federal case that either establishes or recognizes "voter standing." Nor has he explained why, if the concept is so self-evident, no court has yet recognized it.[6]
The fact that the Legislature enacted a statute that was later declared unconstitutional did not confer upon Connerly "voter standing" to sue for an injunction.

IV. Conclusion
A court may not grant declaratory relief in the absence of an actual controversy between adversarial parties. No controversy exists in this case, nor was it necessary or appropriate for a trial court to issue a declaratory judgment restating the holding of a court of higher jurisdiction.
Injunctions do not issue as a matter of right merely because a statute is declared unconstitutional. "[F]or standing to seek the prospective relief of an injunction, a plaintiff must show a likelihood he will be harmed in the future if the injunction is not granted." (Blumhorst, supra, 126 Cal. App.4th at p. 1004, 24 Cal.Rptr.3d 474.) In the absence of an actual or at least threatened expenditure of public funds in the enforcement of an invalid statute, Connerly has no standing to sue as a taxpayer. C & C Construction sounded the death knell for section 8315 and defendants have conceded they are bound by its holding. Connerly was not entitled to an injunction compelling defendants to follow the law.
Where there is no justiciable controversy the proper remedy is not to render judgment for one side or the other, but *214 to dismiss. (See Fiske, supra, 200 Cal. App.3d at p. 1247, 246 Cal.Rptr. 552; Lee, supra, 141 Cal.App.3d at pp. 992, 994, 190 Cal.Rptr. 682.) That will be our disposition.

DISPOSITION
The judgment is reversed, and the cause is remanded to the trial court with directions to dismiss the action. Defendants shall recover their costs on appeal. (Cal. Rules of Court, rule 8.276(a)(2).)
I concur: RAYE, J.
NICHOLSON, Acting P.J., Dissenting.
I respectfully dissent. Although the majority concludes the plaintiff did not have standing and there is no actual controversy, it provides what the plaintiff seeksthat is, a published opinion holding that no part of Government Code section 8315 (section 8315) may be enforced by the state. I would reach that result in a more straightforward manner.

Voter Standing
The trial court ruled that the plaintiff had standing because he is a voter and he alleged violation of his right to vote on an amendment to the California Constitution. I believe the ruling was correct.
"The propriety of a private person's judicial challenge to legislative or executive acts depends upon the fitness of the person to raise an issue (`standing')  [Citations.] [¶] ... [¶] The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a ... court, and not in the issues he wishes to have adjudicated.' [Citation.] A party enjoys standing to bring his complaint into court if his stake in the resolution of that complaint assumes the proportions necessary to ensure that he will vigorously present his case. [Citation.]" (Harman v. City and County of San Francisco (1972) 7 Cal.3d 150, 159, 101 Cal.Rptr. 880, 496 P.2d 1248.)
The plaintiffs stake in the resolution of his complaint is to vindicate his right as a California voter to vote on amendments to the California Constitution. Only California voters may amend the state Constitution. (Cal. Const., art. XVIII, §§ 3, 4.) The right to vote is a fundamental right. "It is beyond cavil that Voting is of the most fundamental significance under our constitutional structure.'" (Burdick v. Takushi (1992) 504 U.S. 428, 433, 112 S.Ct. 2059, 2063, 119 L.Ed.2d 245, 252.) It is therefore vital that a qualified voter be able to vindicate the right to vote through redress in the courts.[1]

Actual Controversy
The state contends that our decision in C & C Construction, Inc. v. Sacramento Municipal Utility Dist. (2004) 122 Cal. App.4th 284, 18 Cal.Rptr.3d 715 (C & C Construction) rendered this proceeding moot and prevented the trial court from granting declaratory and injunctive relief because there was no actual controversy *215 between the parties. To the contrary, although C & C Construction resolved a major legal issue in this proceeding, it did not, in my opinion, render the proceeding moot.
"[T]he court must do complete justice once jurisdiction has been assumed [citation], and the relief thus granted may encompass future and contingent legal rights." (Eye Dog Foundation v. State Bd, of Guide Dogs for the Blind (1967) 67 Cal.2d 536, 541, 63 Cal.Rptr. 21, 432 P.2d 717, fn. omitted.) A proceeding is moot, and should be dismissed, when the court can grant no effectual relief, regardless of the legal merits of the case. (Consol. etc. Corp. v. United A etc. Workers (1946) 27 Cal.2d 859, 862-863, 167 P.2d 725.) Effectual relief, however, can be granted here.
The plaintiffs second amended complaint alleged that section 8315 is unconstitutional and sought (1) a declaration that section 8315 is invalid, unenforceable, and void and (2) an injunction against implementation or enforcement of the statute. After our decision in C & C Construction became final, the state answered the second amended complaint.
Administrative agencies apply the state's statutes. They cannot independently declare a statute unconstitutional and must implement and enforce it "unless an appellate court has made a determination that such statute is unconstitutional." (Cal. Const, art. Ill, § 3.5, subd. (a).) C & C Construction found section 8315's definition of "discrimination," contained in subdivision (b), inconsistent with the use of the term in section 31 of article I of the California Constitution (article I, section 31), but the decision did not deal with the other provisions of the statute. C & C Construction did not consider all of section 8315; therefore, it cannot be said to stand for the proposition that section 8315 is unconstitutional in its entirety. "It is axiomatic that cases are not authority for propositions not considered." (People v. Ault (2004) 33 Cal.4th 1250, 1268, fn. 10, 17 Cal.Rptr.3d 302, 95 P.3d 523.)
The state argues, and the majority finds, that the entire statute was rendered invalid as a result of the decision in C & C Construction because the unconstitutionality of the definition of "discrimination" in the statute defeated the statute's main purpose. This, however, is a legal conclusion concerning the constitutionality of parts of the statute that C & C Construction did not address. While a court can, and the majority does, make this determination, an administrative agency grappling with the issue does not have the power to make this determination concerning constitutionality. For example, if a private person filed a complaint in the Department of Fair Employment and Housing, that agency, until the publication of this opinion, had no authority to conclude all of section 8315 unconstitutional. The majority's conclusion that C & C Construction rendered all of section 8315, even the parts not addressed in C & C Construction, unenforceable supports the relief the plaintiff seeks.
It is difficult to understand the state's position in this litigation, opposing a judgment that would relieve administrative agencies of the Hobson's choice between (1) enforcing part of section 8315, enforcement that would violate article I, section 31, or (2) declining to enforce it based on article I, section 31, a decision that would violate article III, section 3.5's prohibition on declaring statutes unconstitutional.
Section 1060 of the Code of Civil Procedure authorizes declaratory relief actions: "Any person ... who desires a declaration of his or her rights or duties with respect to another, ... may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of *216 his or her rights and duties in the premises.... The declaration may be had before there has been any breach of the obligation in respect to which said declaration is sought." (Italics added.)
Despite the state's insistence that it does not challenge the plaintiffs assertion that section 8315 is unconstitutional, an actual controversy lies in the tension between the duty of state agencies to implement and enforce section 8315 and the plaintiffs assertion that any implementation or enforcement is unconstitutional. As noted, C & C Construction did not make a sweeping determination that any implementation or enforcement of section 8315 would be unconstitutional. It determined only that the definition of "discrimination" in section 8315 was an unconstitutional attempt to amend article I, section 31.
The majority states that relief is not available because the plaintiff does not challenge a specific or threatened application of section 8315. This action, however, is a facial challenge to section 8315an argument that any application would violate the constitution. "A facial challenge to the constitutional validity of a statute or ordinance considers only the text of the measure itself, not its application to the particular circumstances of an individual." (Tobe v. City of Santa Ana (1995) 9 Cal.4th 1069, 1084, 40 Cal.Rptr.2d 402, 892 P.2d 1145.) Accordingly, it does not matter, under these circumstances, that the plaintiff did not challenge a specific application of section 8315.
The state argues, concerning whether relief is available: "Clearly, when an appellate court declares a statute unconstitutional it is neither necessary nor appropriate for courts to issue separate declaratory relief and/or injunctive relief against each and every state agency or officer that could be impacted by the appellate decision." For this proposition, the state provides no authority. The state exaggerates the premise in its attempt to discredit the conclusion. The plaintiff does not seek declaratory and injunctive relief against "each and every state agency or officer that could be impacted by the appellate decision." Instead, he seeks such relief against the Governor, who is the head of the branch of government charged with making many of the decisions subject to the strictures of Proposition 209, and the Attorney General, who is the state's chief civil rights enforcement officer. That is a focused and finite group, which has opposed relief throughout this litigation. (See Raven v. Deukmejian (1990) 52 Cal.3d 336, 276 Cal.Rptr. 326, 801 P.2d 1077 [taxpayers and voters sued Governor seeking injunction against enforcement of Prop. 115]; American Academy of Pediatrics v. Lungren (1997) 16 Cal.4th 307, 66 Cal.Rptr.2d 210, 940 P.2d 797 [plaintiffs sued Attorney General seeking injunction against enforcing statute that violated state constitutional right to privacy].)
Because I conclude the plaintiffs challenge to section 8315 presents a proper case for relief, I would affirm the judgment.
NOTES
[1] Undesignated statutory references are to the Government Code.
[2] Connerly alleged in paragraph 33 of the SAC that he "is informed and believes ... that Defendants dispute that Government Code section 8315 violates [the California Constitution]." In their answer, however, defendants denied the "material factual allegations" of paragraph 33. On appeal from a judgment on the pleadings, the appellate court will assume the truth of all facts properly pleaded in the answer and disregard controverted allegations of the complaint. (Sebago, Inc. v. City of Alameda (1989) 211 Cal. App.3d 1372, 1380, 259 Cal.Rptr. 918.) We must therefore accept as true defendants' denial that there is an actual controversy as to the constitutionality of section 8315.
[3] Our dissenting colleague finds a justiciable controversy in this case because he fears state agencies might enforce subdivision (c) and are powerless to declare a statute unconstitutional on their own. (Dis. opn., post, at p. 215.) There are several problems with this position.

First, Connerly has not named any state agency as a defendant, nor does he allege that any agency is enforcing or threatens to enforce subdivision (c). Instead, Connerly has sued the Governor and the Attorney General, neither of whom has tried to enforce any part of section 8315.
Second, it is impossible to imagine and the dissent does not explain, how an administrative agency could "enforce" subdivision (c) in any procedural context that makes sense.
Third, subdivision (c) is a statutory tail without a head or a body. It prohibits private actions that seek to challenge special measures that enforce subdivision (a)'s definition of "discrimination." However, once our decision in C & C Construction invalidated subdivision (a), no administrative or elected body could implement "special measures" to carry out that definition without violating the law.
Thus, even had we not stated the obvious by announcing the untimely death of subdivision (c), the fact remains that there is simply no "dispute" regarding it between any parties that are now before the court.
[4] Although we have chosen to address the issue, we note that Connerly's reliance on allegations of "taxpayer standing" to uphold the judgment is procedurally infirm. In sustaining a demurrer to the first amended complaint with leave to amend, the trial court rejected Connerly's assertion of taxpayer standing. Yet the SAC repeats the same averments that the trial court had rejected. Connerly was certainly entitled to appellate review of the taxpayer standing issue by refusing to amend his complaint and taking an appeal from the ensuing judgment of dismissal. (Otworth v. Southern Pac. Transportation Co. (1985) 166 Cal.App.3d 452, 457, 212 Cal. Rptr. 743.) He could also have elected to file a writ petition in this court, seeking reinstatement of the taxpayer allegations that the trial court ruled were invalid. (E.g., Taylor v. Superior Court (1979) 24 Cal.3d 890, 894, 157 Cal.Rptr. 693, 598 P.2d 854.) He had no right, however, to circumvent the trial court's ruling by reinserting the overruled allegations in an amended complaint. (Sheeny v. Roman Catholic Archbishop (1942) 49 Cal.App.2d 537, 541, 122 P.2d 60 [plaintiff who amends his complaint after demurrer "impliedly confesses that the original pleading was not sufficient and that it should be corrected. Having made his election, he may not then claim the benefit of the original pleading and the amended one too"]; accord, Alhambra Transfer etc. Co. v. Muse (1940) 41 Cal.App.2d 92, 93, 106 P.2d 63; see also Code Civ. Proc., § 436; Ricard v. Grobstein, Goldman, Stevenson, Siegel, LeVine & Mangel (1992) 6 Cal. App.4th 157, 162, 8 Cal.Rptr.2d 139 [averments in a pleading that do not conform to a court's prior rulings are a sham and may be stricken].)
[5] Connerly's assertion of "citizen standing" was properly rejected by the trial court. Under that doctrine, "[c]itizen suits may be brought without the necessity of showing a legal or special interest in the result where the issue is one of public right and the object is to procure the enforcement of a public duty." (Connerly v. State Personnel Bd. (2001) 92 Cal.App.4th 16, 29, 112 Cal.Rptr.2d 5, citing Green v. Obledo (1981) 29 Cal.3d 126, 144, 172 Cal.Rptr. 206, 624 P.2d 256.) But Connerly's complaint posits no "public duty" that defendants are failing or refusing to discharge vis-à-vis section 8315. Although the SAC contains extraneous allegations that the Attorney General is not enforcing Proposition 209 with sufficient vigor, this action targets only section 8315. Because the adequacy of the Attorney General's enforcement efforts is not at issue in this appeal, we deny Connerly's request for judicial notice
of several pages from the Attorney General's official Web site.
[6] The dissent finds "voter standing," but merely cites one decision reciting general principles of standing and another proclaiming the importance of the right to vote. (Dis. opn., post, at pp. 214-15.) But one plus one does not equal three. We are aware of no state or federal case that recognizes "voter standing" as a means of securing an advisory opinion on whether the Legislature has passed an unconstitutional statute.
[1] The majority disparages my math skills, which may not be altogether inappropriate. There is a good reason my wife handles the checkbook. But voter rights 1 know something about.

Exercising the right to vote is the means by which we, as a free society, preserve all other rights. (Yick Wo v. Hopkins (1886) 118 U.S. 356, 370, 6 S.Ct. 1064, 1071, 30 L.Ed. 220.) I disagree with the majority's underlying and unstated premise that the judicial branch cannot act to check the legislative branch's attempt to amend the Constitution unilaterally. The constitutionality, not the wisdom, of the statute is at issue. The right to amend the Constitution is the epitome of voter rights. Here, the plaintiff approaches the court seeking redress for constitutional injury. The majority sends him packing.