Filed 3/28/13  Save Our Agricultural Land v. County of Santa Cruz CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| SAVE OUR AGRICULTURAL LAND et al., | H036570 |
| Plaintiffs and Appellants, | (Santa Cruz County Super. Ct. No. CV167019) |
| v. | |
| COUNTY OF SANTA CRUZ, | |
| Defendant and Respondent; | |
| COAST DAIRIES AND LAND CORPORATION et al., | |
| Real Parties in Interest and Respondents. | |

Appellants Save Our Agricultural Land, Rural Bonny Doon Association, Don Croll, Bruce Kosanovic, Celia Scott and Jodi Frediani (hereafter collectively appellants) filed a petition for writ of mandate and complaint alleging that respondents and real parties in interest County of Santa Cruz (County), Coast Dairies and Land Corporation (CDLC) and the Trust for Public Land (TPL)[1] were in violation of the California Coastal Act and the Subdivision Map Act, as well as certain local ordinances in relation to a proposed transfer of property to the United States Bureau of Land Management (BLM), and two other unrelated entities.

---

[1] County, CDLC and TPL will be sometimes referred to collectively herein as respondents.

The trial court sustained demurrers to the petition and complaint without leave to amend on the grounds that appellants' claims were not "ripe" for adjudication unless or until CDLC actually "attempts to subdivide the subject parcel" and unless the "County makes an actual and final decision, rather than an advisory determination, pursuant to the procedures of the Coastal Act that the subdivision is not a development within the meaning of the California Coastal Act."

Appellants contend the trial court erred in sustaining the demurrers without leave to amend on the grounds that the claims raised were not "ripe." Due to events which transpired during the pendency of this appeal, appellants' causes of action based on the County and CDLC's failure to obtain a coastal development permit (CDP) or request an opinion from the Coastal Commission prior to permitting transfer of the Coast Dairies Property (Property) are now moot. However, we do agree that the trial court improperly sustained the demurrer to the causes of action based on the Subdivision Map Act and shall therefore reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. First amended verified petition and complaint[2]

#### 1. Alleged facts

The Property consists of an approximately 6400-acre parcel of land, located inland of Highway 1 in Santa Cruz County within the Coastal Zone established by the California Coastal Act, and it contains "an imminent reversionary interest in a portion of the water supply for the Town of Davenport as well as important agricultural and timber lands, and highly sensitive environmental resources." The Property has been owned by CDLC since 1902. On October 26, 1998, TPL purchased CDLC and subsequently developed a plan to

---

[2] The first amended verified petition and complaint was filed after the County, TPL and Coast Dairies' demurrers to the initial verified petition and complaint were sustained with leave to amend.

2

transfer the Property to the BLM.  After BLM indicated it would not accept any portion of the Property used for agriculture, farm labor housing and/or disposal of industrial waste, cement dust or slurry, TPL and CDLC revised the plan to exclude such areas from the proposed transfer.

On March 1, 2004, the Coastal Commission wrote to TPL advising that it would have to obtain a CDP from the County in order to proceed with the proposed subdivision of land.  The County also wrote a letter to TPL indicating that the proposed transfer would not be exempted from the CDP requirement since BLM would allow nonrecreational uses of the Property and requesting that TPL provide a "clearer statement and confirmation of the [Property's] uses . . . to ensure that a violation of the Coastal Act does not take place."

On August 26, 2004, the County notified CDLC that its "proposed division" might raise Subdivision Map Act and Coastal Act issues and the proposed "conveyances would result in the creation of multiple remainders" within two parcels.  The County recommended exploring alternative property configurations which might "prove helpful in resolving potential conflicts with the [Subdivision] Map Act."  Once any Subdivision Map Act issues were resolved, the parties could work on deciding the Coastal Act issues.

In order to avoid the Subdivision Map Act's prohibition on creating multiple remainder parcels, CDLC reconfigured the parcel map to have two smaller agricultural lots connected to a larger agricultural lot by a one-foot wide strip of land running a considerable distance along Highway 1.

In a letter dated September 27, 2007, to the Coastal Commission and a letter dated October 17, 2007, to the County, CDLC summarized the status of its proposed transfers of portions of the Property.  In its letter to the County, CDLC indicated that the Coastal Commission "awaits notification from the County, as the lead agency that this proposed division does not require a [CDP]."

3

Upon being informed in 2008 that CDLC was proceeding with its plan to divide the Property and transfer portions thereof to BLM and the other entities, appellants notified the County and the Coastal Commission that it understood those entities would require a CDP and subdivision approval before allowing CDLC to follow through with its plan. On September 23, 2009, appellants again notified the County that the proposed division would require a CDP and that, if the County disagreed, it was obligated under the Coastal Act to request an opinion from the Coastal Commission's Executive Director.

On February 1, 2010, the County Planning Director wrote to appellants advising that the County would not require CDLC to obtain a CDP for the proposed transfer of the Property to BLM nor would the County seek an opinion regarding the matter from the Executive Director of the Coastal Commission.

On July 12, 2010, the Coastal Commission wrote to County advising that it must seek an opinion from the Executive Director to resolve the question of whether or not a CDP must be obtained before the Property is divided and/or transferred.

Despite these notifications, the County has refused to require TPL and CDLC to obtain a CDP or proceed under the Subdivision Map Act and the County's own regulations before transferring the Property. In addition, the County has refused to seek an opinion from the Coastal Commission's Executive Director regarding the necessity of a CDP, and this is part of a pattern and practice to violate the Coastal Act, its implementing regulations and the County's Local Coastal Program.

### 2. *Causes of action*

The first amended verified petition and complaint lists six causes of action, described in more detail below: (1) declaratory relief; (2) petition for writ of mandate directing County to seek a CDP prior to allowing the transfer of the property; (3) petition for writ of mandate directing County to comply with the Subdivision Map Act and the County's Subdivision Ordinance; (4) petition for writ of mandate directing County to seek an opinion from the Coastal Commission on the necessity for a CDP; (5) petition for

4

writ of mandate alleging County has a pattern and practice of denying interested persons their rights to access the dispute resolution process provided by title 14 of the California Code of Regulations, section 13569 and Santa Cruz County Code section 13.20.085 and directing County to comply with these provisions; and (6) equitable relief/injunction.

### a. First cause of action

The first cause of action for declaratory relief alleges that there is an actual controversy between appellants and respondents regarding whether or not a CDP, subdivision approval and/or conditional certificates of compliance must be obtained before the proposed transfer of the Property may take place. A second alleged controversy involves the County's failure to request an opinion of the Executive Director of the California Coastal Commission. In connection with this cause of action, appellants seek a judicial declaration that County must: (1) require TPL to obtain a CDP, and other "legally-required approvals," prior to any division or transfer of the Property to any other persons; (2) request an opinion from the Executive Director concerning this matter and proceed in accordance with that opinion; and (3) cease its current pattern and practice and request an opinion from the Executive Director whenever any person properly requests that the County seek such an opinion in compliance with the applicable regulations.

### b. Second cause of action

In the second cause of action, appellants allege that Santa Cruz County Code section 13.20.050, a part of the County's Local Coastal Program (LCP) "provides that any person wishing to undertake any 'development,' as that term is defined in Santa Cruz County Code [s]ection 13.20.040, must first obtain a Coastal Zone Approval." Similarly, "the Coastal Act requires a CDP for all 'development' within the Coastal Zone." The relevant definition of "development" includes any " 'change in the density or intensity of use of land, including but not limited to, subdivision pursuant to the Subdivision Map Act . . . , and any other division of land, including lot splits, except where the land division is brought about in connection with the purchase of such land by a public agency for public

5

recreational use.' " Appellants allege the proposed division of the Property would not qualify for the public agency exception under either the Coastal Act of the LCP. Because the County has refused to require Coast Dairies and TPL to apply for or obtain a CDP, appellants seek a writ of mandamus directing the County to (1) set aside its decision that no CDP is required for any division and/or transfer of the Property; and (2) require Coast Dairies and TPL to apply for and obtain a CDP before allowing the Property to be divided and transferred.

### c. Third cause of action

In this cause of action, appellants allege Government Code section 66499.33 provides " 'any person' may file suit 'to restrain or enjoin **any attempted or proposed** subdivision [. . .] in violation of this division or local ordinance enacted pursuant thereto.' (Emphasis added)." Because Coast Dairies and TPL have proposed to divide and transfer all or a portion of the Property without obtaining approval under the Subdivision Map Act and because County has refused to require Coast Dairies and TPL to comply with the Subdivision Map Act or the County's Subdivision Ordinance, appellants seek a peremptory writ of mandate directing County to comply with those laws.

### d. Fourth cause of action

In the fourth cause of action, appellants allege that, in a letter dated September 23, 2009, they requested that the County seek an opinion from the Coastal Commission's Executive Director in accordance with title 14 of the California Code of Regulations, section 13569 regarding whether or not a CDP was required for the proposed transfer of the Property. By letter dated February 1, 2010, the County expressly declined to consult with or notify the Coastal Commission and seek an opinion from the Executive Director of the Coastal Commission, yet it has failed to do so. Appellants seek a writ of mandate directing the County to comply with that regulation.

6

### e. Fifth cause of action

In the fifth cause of action, appellants allege that the County's failure to request an opinion from the Executive Director of the Coastal Commission is part of a pattern and practice of "illegal conduct" by the County in denying interested persons their rights to access the dispute resolution process provided by title 14 of the California Code of Regulations, section 13569 and Santa Cruz County Code section 13.20.085. According to appellants, "the County has failed and refused to perform this mandatory duty as to at least two other development proposals where a request that it obtain an opinion of the Executive Director of the Coastal Commission was duly made." Appellants again seek a writ of mandate directing the County to comply with the regulation and ordinance.

### f. Sixth cause of action

In its sixth cause of action, appellants allege that equitable relief is available under both the Coastal Act and the Subdivision Map Act to restrain violations of those statutes to enjoin the division and transfer of the Property by TPL and CDLC until the necessary permits are obtained.

### B. Demurrer and order

Respondents demurred to the verified first amended complaint and to each cause of action therein on the ground that it failed to state a valid cause of action and also on the ground that the claims asserted therein were not ripe for determination since TPL and CDLC had not yet transferred the Property to BLM or any other entity.

By order dated December 14, 2010, the trial court sustained the demurrers, without leave to amend, and entered a judgment of dismissal. In its order, the court stated that "the California Coastal Commission announced it will hold a public hearing regarding this matter; and until the Coastal Commission acts any legal action is premature and not ripe for adjudication." The court deemed the first and fourth causes of action premature until: (1) CDLC files an application to divide the property; (2) the County determines the division is categorically exempt from a CDP; and (3) in the face

of a claim that the proposed division is not so exempt, the County refuses to submit the dispute to the Coastal Commission.  Similarly, the trial court found the second cause of action was premature until CDLC attempts to subdivide the property or the County makes an actual and final decision that the subdivision is not a development as defined by the Coastal Act.  The third cause of action, alleging a violation of the Subdivision Map Act and the County Subdivision Ordinance, was deemed premature until such time as CDLC attempts to divide the Property.  In ruling on the demurrer to the fifth cause of action, the trial court stated the claim was "unsupported by any legal authority as the County does not have a blanket policy of denying requests for opinions from the Coastal Commission under [title 14 of the California Code of Regulations,] section 13569."  As to the sixth cause of action, the trial court stated it was premature "for the same reasons as set forth above for the First through Fifth Causes of Action."

### C.     *Requests for judicial notice*

Over the course of this appeal, appellants and respondents have submitted requests for judicial notice.  Appellants requested that we take judicial notice of:  (1) County's approval of a consent for consolidated permit processing for the property; (2) CDLC's application to the Coastal Commission for a CDP; and (3) Santa Cruz County Code section 13.20.040.  We granted the request as to the code section, but denied it as to the other two documents.

Appellants then requested that we take judicial notice of certain provisions from the Santa Cruz County Code, specifically sections 14.01.201, 14.01.010, 14.01.317, as well as the portion of Santa Cruz County's Local Coastal Program addressing objectives and policies relating to water supply issues.  We granted that request in its entirety.

Respondents subsequently requested that we take judicial notice of two documents:  (1) an application for CDP approved by the Coastal Commission on April 12, 2012; and (2) the Coastal Commission's May 2, 2012 notice of intent to issue a CDP.

8

We granted the request and have taken judicial notice of both of these documents as official acts of the California Coastal Commission. (Evid. Code, § 452, subd. (c).)

### D. Supplemental briefing regarding mootness

In conjunction with their request for judicial notice, respondents brought a motion to permit supplemental briefing on the issue of mootness. We granted that motion and have received and reviewed additional briefing from both respondents and appellants on this subject.

## II. DISCUSSION

### A. Standard of review

"On appeal from a dismissal entered after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the petition states a cause of action as a matter of law." (*City of Morgan Hill v. Bay Area Air Quality Management Dist.* (2004) 118 Cal.App.4th 861, 869.) "We deem to be true all material facts that were properly pled. [Citation.] We must also accept as true those facts that may be implied or inferred from those expressly alleged. [Citation.] We may also consider matters that may be judicially noticed, but do not accept contentions, deductions or conclusions of fact or law." (*Id*. at pp. 869-870.) "We independently construe statutory law, as its interpretation is a question of law on which we are not bound by the trial court's analysis." (*Id*. at p. 870.)

### B. Mootness

As noted above, the parties have submitted supplemental briefs addressing whether or not the Coastal Commission's decision to grant CDLC's application for a CDP has rendered moot some or all of the instant appeal.

In their briefs, respondents note that the amended verified petition and complaint was based, in large part, on the allegations that the proposed transfer of the Property required approval of a CDP by the Coastal Commission. Since the Coastal Commission has now approved CDLC's application for a CDP, there is no longer a justiciable

9

controversy regarding the issue and thus all of appellants' claims regarding the CDP are moot.

Appellants argue that approval of the CDP does not excuse CDLC's failure to comply with the Subdivision Map Act and the County remains complicit by not requiring CDLC to proceed under the requirements of the Subdivision Map Act. According to appellants, County has "concurrent" jurisdiction and must require CDLC to seek approval pursuant to the Subdivision Map Act before allowing the Property to be divided and transferred.

The general rule is, "[c]ourts do not decide abstract questions of law. An indispensable element to jurisdiction is that there be an actual controversy between parties who have an adversarial interest in the outcome of the litigation." (*Connerly v. Schwarzenegger* (2007) 146 Cal.App.4th 739, 746.) Thus, courts typically do not decide moot questions since such decisions "can have no practical effect or cannot provide the parties with effective relief." (*Californians for Alternatives to Toxics v. Department of Pesticide Regulation* (2006) 136 Cal.App.4th 1049, 1069.)

Accordingly, we must examine the allegations of the petition and complaint in light of the Coastal Commission's action on the CDP, determine what controversies remain to be resolved and whether or not effective relief remains available to appellants. In this case, appellants' first, second, fourth, and fifth causes of action are all exclusively premised on allegations that the respondents were obligated to obtain a CDP and that the County, which denied having any such obligation, was required to request an opinion from the Coastal Commission's Executive Director on the matter. Because the Coastal Commission has granted CDLC's application for a CDP, the first, second, fourth and fifth causes of action are now moot in their entirety. There is no justiciable controversy to be decided, at least insofar as the matter of a CDP is concerned. The Coastal Commission has acted on the application and further proceedings on the issue would be fruitless.

10

This leaves the third cause of action for violation of the Subdivision Map Act and that the sixth cause of action which seeks equitable/injunctive relief to cure that violation. According to CDLC and TPL, these causes of action are also moot because the CDP results in the creation of fewer than five parcels and is thus exempt from the Subdivision Map Act. In its supplemental brief, the County argues that the cause of action is moot because the Coastal Commission's "approval of the [CDP] was pursuant to the consolidated permit processing procedure authorized by the California Coastal Act in section 30601.3 of the Public Resources Code."

Appellants object to CDLC's theory that the matter is exempt from the Subdivision Map Act because the CDP results in the creation of fewer than five parcels on the ground that this theory was not raised below or in the original briefing on appeal. Substantively, appellants note that, per county ordinance, "[a] tentative map and a parcel map shall be required for all subdivisions creating not more than four parcels." (Santa Cruz County Code, § 14.01.201, subd. (b).)

We have found no authority, and respondents have cited no authority, which provides that proceedings under the Coastal Act either preempt or substitute for proceedings under the Subdivision Map Act. There appears to be no reason why a development which is not otherwise exempt under either statutory scheme should not be subject to proceedings under both. In fact, a combined application under the Subdivision Map Act and the Coastal Act appears to be endorsed by Public Resources Code section 30600, subdivision (b)(1), which authorizes local governments to "establish procedures for the filing, processing, review, modification, approval, or denial of a coastal development permit," and specifies that "[t]hose procedures may be incorporated and made a part of the procedures relating to any other appropriate land use development permit issued by the local government." In addition, part of the Subdivision Map Act expressly confers authority on local governmental agencies to deny or condition a permit

11

to ensure compliance with state law, including presumably the Coastal Act. (Gov. Code, § 66498.1, subd. (c)(2).)

County's citation to the consolidated permit processing procedure set forth in Public Resources Code section 30601.3 is inapposite. The statute allows the Coastal Commission to "process and act upon a consolidated coastal development permit application if both of the following criteria are satisfied: [¶] (1) A proposed project requires a coastal development permit from both a local government with a certified local coastal program and the commission. [¶] (2) The applicant, the appropriate local government, and the commission, . . . consent to consolidate the permit action, provided that public participation is not substantially impaired by that review consolidation." (*Id.* subd. (a).) This statute specifically references consolidation of an application where a certified local coastal program is in place, and appears to be aimed at obviating the need to conduct separate proceedings under such a local coastal program *and* the Coastal Act. The statute makes no mention of the Subdivision Map Act as one of the processes which can be avoided by agreement between the applicant, the local government and the Coastal Commission, and we decline to extend the statute's application by judicial fiat.

The mere fact that the Coastal Commission has acted on an application for a CDP in this case does not necessarily preclude an action to compel respondents to comply with the Subdivision Map Act as well. Accordingly, the third cause of action and that part of the sixth cause of action seeking equitable/injunctive relief for violating the Subdivision Map Act are not moot.[3] We now turn to the question of whether or not the trial court correctly sustained respondents' demurrers to these causes of action.

---

[3] We recognize that the sixth cause of action also seeks equitable/injunctive relief relating to respondents' failure to obtain a CDP. Due to the Coastal Commission's approval of the CDP, that part of the sixth cause of action is also moot. We are confident the parties and the trial court will be able to determine how to best clean up the pleadings following remand.

12

*B.      Analysis*

*1.      Ripeness*

As discussed above, the trial court sustained respondents' demurrers on the grounds that the various causes of action set forth therein were not ripe. As to the alleged violations of the Subdivision Map Act, the trial court indicated those claims were not ripe until CDLC sought to divide the Property.

"The ripeness requirement, a branch of the doctrine of justiciability, prevents courts from issuing purely advisory opinions. [Citation.] It is rooted in the fundamental concept that the proper role of the judiciary does not extend to the resolution of abstract differences of legal opinion. It is in part designed to regulate the workload of courts by preventing judicial consideration of lawsuits that seek only to obtain general guidance, rather than to resolve specific legal disputes. However, the ripeness doctrine is primarily bottomed on the recognition that judicial decisionmaking is best conducted in the context of an actual set of facts so that the issues will be framed with sufficient definiteness to enable the court to make a decree finally disposing of the controversy." (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170.) To be ripe, " '[t]he controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. [Citation.] It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' " (*Id*. at pp. 170-171, italics added, quoting *Aetna Life Ins. Co. v. Haworth* (1937) 300 U.S. 227, 240-241.)

*2.      The Subdivision Map Act*

"The Subdivision Map Act is 'the primary regulatory control' governing the subdivision of real property in California." (*Gardner v. County of Sonoma* (2003) 29 Cal.4th 990, 996.) A subdivision is defined as "the division, by any subdivider, of any unit or units of improved or unimproved land, or any portion thereof, shown on the latest

13

equalized county assessment roll as a unit or as contiguous units, for the purpose of sale, lease, or financing, whether immediate or future." (Gov. Code, § 66424.) With respect to enforcement, "[any] person . . . may file a suit . . . to restrain or enjoin any attempted or proposed subdivision or sale, lease, or financing in violation of this division or local ordinance enacted pursuant thereto." (*Id*. § 66499.33.)

### 3.    Analysis

In their third cause of action, appellants allege that CDLC and TPL have proposed to divide and transfer all or a portion of the Property without obtaining approval under the Subdivision Map Act or the County's subdivision ordinance and that the County has refused to require CDLC and TPL to comply with those statutes. In the sixth cause of action, appellants allege they are entitled to equitable/injunctive relief to enjoin the proposed division of the Property unless and until respondents comply with the requirements of both the Subdivision Map Act and the County's subdivision ordinance.

Reviewing these allegations and, as we must, assuming them to be true, we find that the trial court erred in determining that the third and sixth causes of action, alleging a violation of the Subdivision Map Act and seeking equitable/injunctive relief to remedy that violation, were not ripe for adjudication. Appellants alleged that CDLC and TPL had proposed to subdivide and transfer some or all of the Property to BLM, among other entities, but that the County had failed to require CDLC and TPL to seek approval for that subdivision and transfer pursuant to the Subdivision Map Act. It is not clear how these allegations fail to present issues "framed with sufficient definiteness to enable the court to make a decree finally disposing of the controversy." (*Pacific Legal Foundation v. California Coastal Commission*, *supra*, 33 Cal.3d at p. 170.) The Subdivision Map Act expressly authorizes an action "to restrain or enjoin any attempted or proposed subdivision" and since CDLC and TPL are alleged to have proposed subdividing the Property without complying with the Subdivision Map Act, appellants' claims state a judiciable controversy.

14

## III.    DISPOSITION

The judgment is reversed.  The trial court is directed to vacate its order sustaining the demurrers to the verified first amended petition and complaint and enter a new order: (1) sustaining the demurrers to the first, second, fourth and fifth causes of action as moot; and (2) overruling the demurrers to the third and sixth causes of action.

Appellants shall recover their costs on appeal.

_____

Premo, Acting P.J.

WE CONCUR:

_____

Elia, J.

_____

Mihara, J.